UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

MEAGAN MALAVE

      Plaintiff,

v.

NCL (BAHAMAS) LTD.,
A BERMUDA COMPANY d/b/a
NORWEGIAN CRUISE LINE,
a Foreign Profit Corporation;
ONE SPA WORLD LLC, d/b/a
MANDARA SPA, a Florida
Limited Liability Company;
ONESPAWORLD U.S., INC., a Florida
Profit Corporation;  and ONESPAWORLD
HOLDINGS LIMITED

      Defendants.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff MEAGAN MALAVE hereby sues the Defendants NCL (BAHAMAS) LTD

d/b/a NORWEGIAN CRUISE LINE; ONE SPA WORLD LLC d/b/a MANDARA SPA;

ONESPAWORLD U.S., INC; and ONESPAWORLD HOLDINGS LIMITED and files this

Complaint for damages and alleges:

## THE PARTIES AND JURISDICTION

1.      This is an action for damages in excess of $75,000 exclusive of interest, costs, and

attorneys' fees.

2.      **THE PLAINTIFF.**  The Plaintiff MEAGAN MALAVE (hereinafter "Plaintiff") is

*sui juris* and is a resident and citizen of New York for purposes of Diversity of Citizenship.

1

3.      **THE DEFENDANTS.**  NCL (BAHAMAS) LTD d/b/a NORWEGIAN CRUISE LINE (hereinafter referred to as "NCL"), is a Bermuda company incorporated under the laws of Bermuda, which at all times material hereto was headquartered and does business in Miami-Dade County, Florida.  For purposes of diversity of citizenship, NCL is a citizen of the country of Bermuda. At all times material hereto, NCL owned and/or operated the cruise ship on which the subject negligence occurred.

4.      The Defendant ONE SPA WORLD LLC, d/b/a MANDARA SPA (hereinafter referred to as "Mandara Spa"), is a Florida Limited Liability Company, and at all times material hereto does business in the State of Florida and was headquartered in Miami-Dade County, Florida. At all times material hereto, the Defendant operated, managed, or jointly controlled the Spa services which include the retail sale of Spa and beauty products, and the personnel responsible for the maintenance and cleaning of the subject flooring within the Spa onboard the NCL cruise ship where the subject negligence occurred.

5.      The Defendant ONESPAWORLD U.S., INC., (hereinafter referred to as "OSW U.S.") is a Florida Profit Corporation, and at all times material hereto does business in the State of Florida and was and is headquartered in Miami-Dade County, Florida. At all times material hereto, the Defendant operated or jointly controlled the Spa services, which included the retail sale of Spa and beauty products, and the personnel responsible for the maintenance and cleaning of the subject flooring within the Spa onboard the NCL cruise ship where the subject negligence occurred.

6.      The Defendant ONESPAWORLD HOLDINGS LIMITED (hereinafter referred to as "OSW"), is a Foreign Corporation incorporated in the Commonwealth of Bahamas. Upon information and belief, OSW is the Parent Company of OneSpaWorld US Inc., One Spa World LLC, d/b/a MANDARA SPA., and OneSpaWorld LLC. Upon information and belief OSW maintains operational headquarters in Miami-Dade County, Florida**.** Upon information and belief,

OSW entered into a contract with NCL for the operation, management, inspection and cleaning of Spa services which include sales of beauty products, therapy services for body and wellness such as the cold plunge pool onboard the NCL cruise ship where the subject negligence occurred. Both NCL and OSW are in possession of the contract between the parties, as well as all documents outlining the specific duties of NCL, Mandara Spa, OSW U.S., and OSW, regarding the Spa services onboard the NCL cruise ship where the incident occurred.

7.    **FEDERAL SUBJECT MATTER JURISDICTION.**   Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332 as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

8.    **VENUE AND PERSONAL JURISDICTION.**   The Defendants, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

    a)   Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

    b)   Had an office or agency in this state and/or county; and/or

    c)   Engaged in substantial activity within this state; and/or

    d)   Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

9.      All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

10.      **DATE OF THE INCIDENT.**  The incident occurred on November 8, 2024.

11.      **LOCATION OF THE INCIDENT.**  The incident occurred onboard the *NCL Joy* on the dark-colored flooring on the narrowly enclosed steps leading to the cold plunge pool, a stairway designed, installed, and maintained by NCL on Deck 16. Specifically, the incident resulted from the cruise line, individually and jointly with Mandara Spa, OSW U.S., and/or OSW, allowing water to accumulate and remain on the dark enclosed steps that were slippery when wet leading to the cold plunge pool within the Thermal Suite of the Spa on Deck 16 of the *NCL Joy*.

12.      **STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT.**  At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and accordingly was an invitee while on the vessel. Further, an employee of NCL, Mandara Spa, OSW U.S. and/or OSW was giving the Plaintiff a tour of the Spa facilities and accordingly Plaintiff was an invitee when the incident took place.

13.      **DESCRIPTION OF THE INCIDENT.**  Spa personnel onboard the RCCL cruise ship not only allowed a large track of water to be left unattended to on some wet, slippery, tiled stairs in a dark hallway but also gave a tour to and directed the Plaintiff, a cruise passenger, to use those very same wet, slippery, tiled stairs.  The plaintiff slipped fell while descending the stairs and hit her head and suffered severe and permanent injuries.

14.      This incident happened on the last port day of a three-day cruise. It occurred in the afternoon while the ship was in port in The Bahamas. At that time in the afternoon, when the ship is in port, some spa personnel go ashore, leaving the spa with fewer employees available to inspect and clean the spa facilities.

15.     The spa attendant who gave the tour of the facility worked in the spa area where the incident occurred. She, the attendant who gave the tour, had been in the area of the spa where the incident happened when she was summoned to the front reception area of the spa by the person who worked at the front desk of the spa. The attendant went to the front desk to meet the Plaintiff, who had asked the front desk person for a tour of the facilities. This employee or agent of the cruise line, who at the time was an employee or agent of Mandara Spa, OSW U.S., and/or OSW, guided the Plaintiff on a tour of the spa.

16.     During the tour, the spa personnel guided the Plaintiff through various shower areas, where the Plaintiff observed approximately three passengers using the wet areas, including the shower and hot tub areas, when the attendant took the Plaintiff for a tour of the facilities. The spa personnel then approached the stairway leading to the cold plunge pool located on an upper level of the spa facilities. At that time, the spa personnel instructed and directed the Plaintiff to the cold plunge pool which was located at the top of some dark tiled stairs in a dark hallway.

17.     The employee directed the Plaintiff up those steps knowing that the steps are frequently wet from passengers using the cold plunge pool at the top of the staircase. Certainly, that employee should have known that the steps were frequently wet. That employee also knew that passengers in the area, including those walking up the steps, would not see the wetness of or water on the steps and would not fully appreciate how slippery the steps become when wet.

18.     The water on the steps seemed to lead from the area of the cold plunge pool area to the steps and down the steps. This is evidence that passengers typically get out of the cold plunge pool dripping wet and proceed down the steps in order to reach the shower and jacuzzi areas where there is hot water so that passengers can get warmed up after their cold plunge. The area of the floor in the cold plunge area, down to and over the steps in which some water was on the floor was

so large that the water had to have been tracked there during the entire afternoon without cleanup by spa personnel.

19.     The steps where the incident occurred were made out of a dark material, and the lighting on the steps and in the narrow staircase was dim. For that reason, the water on the steps was not readily visible to someone walking up or down the steps. The steps were unreasonably and unpredictably slippery—like ice—when wet.

20.     Despite these conditions, the attendant who gave the tour to the Plaintiff did not clean or dry the steps either before the tour began or before directing the Plaintiff up the stairs to view the cold plunge pool. The attendant did not warn the Plaintiff that the steps were wet or that the steps were slippery as ice when wet. Neither the attendant nor any other ship's personnel warned the Plaintiff—verbally, by way of signs, lights, barriers, or otherwise—that the steps were wet and slippery. The attendant also did not accompany the Plaintiff up the steps. Instead, the attendant directed the Plaintiff to go up the steps to see the cold plunge area.

21.     Unbeknownst to the Plaintiff, the steps were wet and slippery. The steps had been made wet and slippery by other passengers earlier in and throughout the course of the day when those passengers exited the cold plunge pool. And the steps were unreasonably and unpredictably slippery when wet.

22.     The cruise line installed the flooring in this area which flooring is dangerously slippery when wet.  The cruise line also chose the color of the flooring tiles, which were dark, chose the dark enclosed walls, and chose lighting conditions which made it difficult to perceive water or dampness on the steps. Despite these hazards, the cruise line and/or Mandara Spa, OSW U.S., and OSW allowed and continued to direct passengers onto this dangerous staircase.

23.     After the fall, the Plaintiff noticed that water on the steps covered the area from the cold plunge pool area to the steps and down the steps. This further evidences that passengers

typically exit the cold plunge pool dripping wet to proceed to the different amenities offered within the thermal suite. The area of the floor in the cold plunge area, down to and over the steps, was so large that the water had to have been tracked there during the entire afternoon without cleanup by spa personnel.

24.     **DUTIES OWED BY NCL.**  Under the General Maritime Law, the Defendant NCL owes to its passengers a non-delegable duty to act reasonably under the circumstances. The circumstances are that NCL operates 19 cruise ships which includes the *NCL Joy*.  The *NCL Joy* is a part of the Breakaway Class which includes the *Norwegian Bliss, Norwegian Encore* and *Norwegian Escape*. The Norwegian Breakaway Class as well as other ships in NCL's fleet were designed and custom built on the specifications or at the direction of NCL's shoreside New Build Department and other shoreside departments. NCL employs architects, designers, and engineers.  The ship was built in Germany at a shipyard under the constant supervision of NCL's onsite construction managers, designers, architects, and engineers.  Under the contract with the shipyard, NCL has full access to the ship to inspect and to reject any aspect of the design or construction of the ship.  NCL maintains ultimate control under their contract with the shipyard if any aspect of design or construction is unsafe, in violation of International safety codes, or not reasonable under the circumstances.  NCL has ultimate control because they participate in the design and because they are onsite during construction. NCL also has ultimate control over design and construction because if their request for a certain design or construction is not carried out correctly or if their request for charges are not carried out NCL can withhold payment. All of NCL ships including the Breakaway Class from bow to stern and across all decks have the express approval from NCL before entering navigable waters.

25.     The *NCL Joy* was delivered to NCL as finished on April 27, 2017.  NCL has operated and maintained the ship continuously since that time. The *NCL Joy* has a capacity for 3,883 passengers and 1,821 crew members.

26.     To attract more adult travelers NCL advertises the Spa services including notifying potential travelers of NCL's Thermal Suite Voyage Pass alerting passengers "…Immerse yourself in the healing waters of the Thalassotherapy and Plunge Pools, then invigorate your body with Rainfall Ritual Showers, the chilling Ice Room and the comforting Dry Sauna."[1]

27.     While some of the Spa facilities onboard NCL's ships may be operated with brand partners, NCL selected which partners to hire, supervises operations, has the right to inspect each facility, is responsible for the maintenance of each Spa as well as provides rules and procedures which each Spa must follow.  Any NCL partner who hires employees to operate these facilities must undergo and are expected to abide by NCL's shipboard rules and procedures which includes slip and fall prevention.

28.     As anticipated and intended by NCL, passengers constantly and repetitively use Spa treatments and the Thermal Suite which many adult passengers describe as a favorite part of cruising with NCL.

29.     The bathers and employees who work in and around the pools, saunas, jacuzzies and other wet amenities within the Thermal Suite track water throughout the Thermal Suite floors.  The constant use of entering and exiting these amenities causes guests to drip, track and cause water to accumulate on the floors. Over time the dripping and tracking of water can cause puddles to accumulate on the floors if they are not maintained by staff.

---

[1] *See https://www.ncl.com/cruise-ships/norwegian-joy/whats-on-board/spa#filter=SPA*

30.     Not only do guests and employees track water over the floors but also apply beauty and wellness products, particularly those focused on skincare, body care and aromatherapy which can include body oils, sun care products, essential oils while using the Spa and/or other areas of the ship during the cruise. These oils and lotions drip directly onto the floor surface and are washed onto that surface when bathers go into these wet amenities and water and/or wet sources drips off them and onto the floor carrying the oils and lotions onto the floor along with the water.  This water and the accumulation of oils and lotions causes the floor to be extremely slippery when wet.  This is an ongoing, continuous problem of which NCL is well aware. For this reason, NCL knew or should have known the design and selection of materials for the interior areas of the Thermal Suite needed to be appropriate, slip resistant and safe for installation and use in locations subject to heavy to passenger traffic and continuous exposure to wetness.

31.     Despite the fact that NCL was aware of these circumstances based on its years of maritime experience and knowledge of prior incidents demonstrating that its Spa wet floors including in the Thermal Suite are not readily apparent and can blend into the floors, NCL employees or agents did little or nothing to address these dangers.  In this case, the tour guide led the Plaintiff through the Thermal Suite and to the cold plunge pool despite areas of the floor suffering from accumulations of water and did so without inspecting the subject staircase for wetness.

32.     **NOTICE: PRIOR SIMILAR INCIDENTS.**  Prior similar incidents show evidence that NCL, Mandara Spa, OSW U.S., and OSW had notice of the dangerous condition here. NCL documents slip and fall in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of slip and falls; prior complaints made to passenger services throughout their fleet; safety testing and/or inspections testing.  Examples of similar prior incidents known to date include the following

9

incidents involving passengers who slipped and fell on wet slippery walkways on NCL's ships under the same and/or similar circumstances as Plaintiff:

a. Passenger Marina Gant was walking on the open deck of near the Spice H20 area when she slipped on the floor on board the *NCL Escape* on June 11, 2022. *Marina Gant v. NCL (Bahamas) Ltd*., Case No.: 1:23-cv-23005-BB.

b. Passenger G.P. slipped and fell on a wet, slippery, transitory substance on the open deck area near the ship's Spice H20 lounge on board the *NCL Breakaway* on January 9, 2020. See *Perez v. NCL (Bahamas) Ltd*., Case No. 1:20- cv-24631

c. Passenger G.K. slipped and fell on a wet, slippery, transitory substance on the open deck floor surface near the Spice H20 area on board the *NCL Escape* on January 9, 2019. *Knight v. NCL (Bahamas) Ltd*., Case No. 1:20-cv-21045.

d. On October 22, 2015, Robert Edward Peterson was on the *NCL Breakaway* when he slipped and fell on water on deck 16 by the hot tub. See *Peterson v. NCL (Bahamas) Ltd.*, 748 Fed.Appx. 246 (11th Cir. 2018). In discovery in *Peterson*, NCL provided an interrogatory response identifying **60** slip and fall incidents on the *NCL Breakaway* on the open deck. See *Peterson*, 748 Fed. Appx. 250.

e. On November 6, 2015, John Leano slipped and fell in a puddle while he was walking on a passenger deck on board the *NCL Pearl. Leano v. NCL (Bahamas) Ltd.,* Case No. 1:16-cv-24378-JAL.

f. On November 20, 2014, Nickolas Piccolo slipped and fell in a puddle while he was walking on a passenger deck on board the *NCL Pearl. Piccolo v. NCL (Bahamas) Ltd.,* Case No. 1:15-cv-24209.

g.  On March 19, 2011, Thomas Frasca exited to the open deck of Deck 6 on the *Pride of America* and slipped and fell on the wet deck. *Frasca v. NCL (Bahamas), LTD., d.b.a. NCL, et al.,* 654 Fed. Appx. 949 (11th Cir. 2016).

h.  Passenger Linda Tremblay was injured on May 27, 2023, when she slipped and fell while walking on the steps of the hot tub located at the vessel's spa. *Tremblay v. NCL*, Case No. 1:24-cv-24728.

i.  Passenger Lawanda Burke slipped and fell while entering the spa onboard the Norwegian Gem. *Burke v. NCL . Burke v. NCL,* Case No. 23-cv-24631.

j.  Passenger Jonathan Hester v NCL slipped and fell while at the spa on Deck 16 onboard Norwegian Escape. *Hester v. NCL*, Case No. 20-cv-23208.

k.  Passenger Christine Kessler slipped and fell on the spa on Deck 15 on the Norwegian Breakaway. *Kessler v. NC*L, Case No. 19-cv-20583.

l.  Employee Danny Simpson slipped and fell on the spa floor while working onboard Norwegian cruise's.  Norwegian settle the case prior to the lawsuit being filed. *Simpson v. Steiner Transocean*, Case No. 09-cv20186.

33.  **NOTICE: THE SIZE OF THE WET AREA.**  Additional evidence that NCL, Mandara Spa, OSW U.S., and OSW who provided Spa services had noticed of the dangerous condition here is shown by the size of the wet area.  After falling, the Plaintiff observed there were wet areas on the steps and area around her. Plaintiff's back and her arms were wet. Further, the water on the steps seemed to cover the area from the cold plunge pool area to the steps and down the steps. That is evident that passengers typically get out of the cold plunge pool dripping wet and head down the steps in order to get tot eh shower and jacuzzi areas where there is hot water so that passengers can get warned up after their cold plunge. And the area of the floor int eh cold plunge

area down to and over the steps was so large that the water had to have been tracked there during the entire afternoon without clean up by the spa personnel.

34.     **NOTICE: LENGTH OF TIME THE DANGEROUS CONDITION EXISTED.**

Additional evidence that NCL, Mandara Spa, OSW U.S., and OSW, who provided spa services onboard the vessel, had actual and/or constructive notice of the dangerous condition is demonstrated by the length of time the condition existed. The water on the steps covered a large area extending from the cold plunge pool area, over the steps, and down the staircase. This condition evidences that passengers routinely exit the cold plunge pool dripping wet and traverse the steps to access the shower, hot tub, and jacuzzi areas to warm up. The extent and saturation of the wet area was so substantial that the water had to have been tracked onto the steps over the course of the entire afternoon without cleanup by spa personnel.

35.     The incident occurred at approximately 4:00 p.m. on the last port day of a three-day cruise, while the ship was in port in The Bahamas. At that time, spa personnel routinely go ashore, leaving the spa with fewer employees available to inspect and clean the area. Under these circumstances, the dangerous wet condition existed for a sufficient length of time that Defendants knew or should have known of its existence and failed to remedy it.

36.     **NOTICE: CREW MEMBERS IN THE VICINITY OF THE SUBJECT AREA.**  Additional evidence that NCL, Mandara Spa, OSW U.S., and OSW had notice of the dangerous condition is shown by the presence of crew members and spa personnel in and around the subject area. At the time of the incident, a spa attendant—who worked in the spa area where the incident occurred—was physically present in the Thermal Suite and was actively guiding the Plaintiff on a tour of the facilities.

37.     The spa attendant had been in the area where the incident occurred prior to being summoned to the front desk and then returned to the Thermal Suite with the Plaintiff. While

escorting the Plaintiff, the attendant walked through wet shower and hot tub areas and then approached the stairway leading to the cold plunge pool. Despite being present in the immediate vicinity of the wet and slippery staircase, the attendant failed to inspect, clean, dry, block access to, or warn the Plaintiff of the dangerous condition before directing her to ascend the steps.

38.     **NOTICE: ONGOING, REPETITIVE PROBLEM.** Additional evidence of notice is shown by the ongoing and repetitive nature of the hazardous condition. The staircase and surrounding walkway were continuously and repeatedly made wet by passengers exiting the cold plunge pool and proceeding to the showers, jacuzzi, and other Thermal Suite amenities. This recurring wet condition is inherent in the design, location, and function of the cold plunge pool and adjacent staircase.

39.     Defendants knew or should have known that the subject area was frequently wet and slippery, particularly during the afternoon hours when passengers use the Thermal Suite amenities. The size and location of the wet area demonstrate that the condition was not isolated or momentary but rather a repetitive problem that required regular monitoring, cleaning, and warnings, which Defendants failed to provide.

40.     **NOTICE: CAUTION SIGNS.** Additional evidence that NCL, Mandara Spa, OSW U.S., and OSW, had notice of the dangerous condition here is shown by the fact that the cruise line posts caution signs in the subject area and posted signs in the vicinity prior to the incident.

41.     **NOTICE: TRAINING AND PROCEDURES AND TRAININGS.** Additional evidence of notice is shown by Defendants' training, policies, and procedures applicable to the subject area. NCL maintains policies and procedures requiring crew members to inspect and maintain floors in a clean and dry condition. NCL trains its crew members that its floors are slippery when wet and that such conditions can cause passengers to slip, fall, and suffer injury. NCL further trains its crew

to place wet-floor warning signs and to take corrective action in areas that are known to become repetitively wet.

42.     NCL created and implemented these procedures because it knows that passengers may not perceive wet conditions, particularly in areas with dark flooring, dark enclosed walls, dim lighting, and narrow staircases. These policies apply not only to NCL employees but also to contracted partners, including Mandara Spa, OSW U.S., and OSW, who are required to follow NCL's safety procedures onboard its vessels.

43.     In this case, despite these known policies and training, Defendants failed to inspect, clean, dry, warn, block access to, or accompany the Plaintiff on the wet staircase. The dangerously slippery condition of the staircase was not open and obvious to the Plaintiff.

44.     **NOTICE: VIOLATION OF INDUSTRY STANDARDS.** NCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  NCL's walkways are escape routes that NCL must maintain in a safe, clear, clean and dry condition. Upon information and belief, NCL, at all relevant times, was aware of industry safety standards of ASTM, ANSI, ISM Code and Regulations and other industry standards applicable to providing and maintaining safe walkways and floor materials. See, *e.g.*, IMO, <u>MSC Circular 735</u> (24 June 1996); U.S. Access Board, <u>Draft Passenger Vessel Accessibility Guidelines</u> (2000-present) and ADA <u>Accessibility Guidelines</u>; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; <u>Life Safety Code</u>; and Safety of Life at Sea SOLAS) Treaty.

**COUNT I**
**NEGLIGENT FAILURE TO MAINTAIN - NCL**
**(Direct Liability for Negligence Under General Maritime Law)**

45.     The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 44 above.

46.     This is an action against NCL for failure to maintain the Spa staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite on Deck 16, in a reasonably safe condition onboard the *NCL Joy* on November 8, 2024.

47.     **DUTIES OWED BY NCL.**  NCL owes duties to exercise reasonable care under the circumstances for the safety of its passengers, including Plaintiff.  NCL's duties of care regarding maintaining the subject area include: (a) inspecting on a frequent and timely basis for wetness or a water accumulation on the slick floor believed to be composed of a surface material known to become slippery-when-wet; (b) cleaning and drying wetness or a water accumulation on the slick, slippery-when-wet flooring; (c) cordoning or blocking off any area on the slick, slippery when wet floor with wetness or a water accumulation; (d) performing a safety walkthrough of the Spa including the area where the Plaintiff fell before conducting a tour of the subject area; (e) failing to inspect the Spa services to ensure the method and frequency used to inspect and maintain do not create a hazardous conditions for NCL passengers; (f) oversee, supervise and audit the work of any entity who is contracted to provide services onboard its ship to ensure passenger's safety; (g) hiring sufficient number of cleaning personnel to patrol and inspect the floors including this one for wetness and water accumulation; including the staircase leading to Deck 16, area onboard the *NCL Joy* in a safe manner, where Plaintiff slipped and fell on November 8, 2024.

48.     **NOTICE.**  As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

49.    **NCL BREACHED ITS DUTY.**  NCL breached its duty to maintain the slippery walkway floors and staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite the *NCL Joy* on November 8, 2024, where Plaintiff slipped and fell.  NCL breached its duties by failing to: (a) inspect on a frequent and timely basis for wetness or a water accumulation on the slick floor believed to be composed of a dark material known to become slippery-when-wet; (b) clean and dry wetness or a water accumulation on the slick, slippery-when-wet flooring; (c) cordon or block off any area on the slick, slippery-when-wet floor with wetness or a water accumulation; (d) performing a safety walkthrough of the Spa including the area where the Plaintiff fell before conducting a tour of the subject area; (e) inspect, audit, supervise the Spa services provided onboard to ensure the method and frequency used to inspect and maintain do not create a hazardous conditions for NCL passengers; (f) oversee and supervise the work of any entity who is contracted to provide services onboard its ship to ensure passenger's safety; (g) hire sufficient number of cleaning personnel to patrol and inspect the floors including this one for wetness and water accumulation; including the dark slippery-when-wet staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite onboard the *NCL Joy* where Plaintiff slipped and fell on November 8, 2024.

50.    **PROXIMATE CAUSE.**   NCL's failure to inspect and maintain the slippery-when-wet flooring in the subject area onboard the *NCL Joy* in a safe manner, proximately caused Plaintiff's injuries. The Defendant's negligent inspection and maintenance allowed wet areas to remain on the dark staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite, rendering the steps slick and dangerously slippery for an extended period of time. Had NCL properly maintained and inspected the subject area onboard the *NCL Joy*, Plaintiff would have never slipped, fallen, and been injured on *NCL Joy* on November 8, 2024.

51.   **DAMAGES.**   As a direct result of Defendant's negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against NCL for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

### COUNT II
### NEGLIGENT FAILURE TO MAINTAIN - NCL
**(Vicarious Liability for Negligence of Employees**
***Respondeat Superior* Under The General Maritime Law)**

52.   The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 44 above.

53.   This is an action against NCL for its vicarious liability arising from the active negligence of its stewards (aka cleaners) who were assigned, scheduled, instructed, and/or directed

to inspect and/or maintain the slippery-when-wet staircase flooring on the staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite onboard *NCL Joy* on November 8, 2024, and the negligence of the supervisors of those particular stewards assigned on that day and at that location, that is the Assistant Housekeeping Manager and Housekeeping Manager.

54.     **DUTIES OWED BY THESE CLEANING PERSONNEL.**  NCL personnel described herein owed duties to exercise reasonable care under the circumstances for the safety of NCL's passengers arising from the employer-employee relationship between NCL and its personnel. The cleaners or stewards who were assigned to this ship and to this area on the day of this fall had a duty to:  (a) inspect on a frequent and timely basis for wetness or a water accumulation on the slick, slippery-when-wet polished floor and stairs; (b) clean and dry wetness or a water accumulation on the slick, polished floor and steps; (c) cordon or block off any area on the slick, polished floor and steps with wetness or a water accumulation, and other means; (d) perform a safety walkthrough of the Spa including the area where the Plaintiff fell before conducting a tour of the subject area; and other means.

55.     NCL's shipboard assistant housekeeping manager or supervisor create shift schedules and section assignments that designate specific employees to inspect and maintain the floors of their designated areas including the slippery-when-wet flooring in the subject area. NCL's employees assigned to the subject area are part of a larger class of crewmembers on the housekeeping department which are commonly referred to as stewards or cleaners. NCL's Assistant Housekeeping Manager and Housekeeping Manager scheduled, designated, assigned, instructed and/or directed stewards or cleaners to inspect and maintain the slippery-when-wet flooring which included the on Deck 16 leading to the cold plunge pool of the Thermal Suite onboard *NCL Joy* on November 8, 2024.

56.     The stewards assigned to the subject area where Plaintiff slipped and fell were responsible for inspecting on a timely and frequent basis areas for wetness or water accumulation,

18

clean and dry areas of wetness or water accumulation, block off areas on the slick, polished floor and steps with wetness or a water accumulation or other means to prevent slip and falls in compliance with NCL's maintenance program as alleged in paragraph 41.

57. **THESE CLEANING PERSONNEL BREACHED THEIR DUTIES.** NCL's stewards breached their duties to maintain the slippery-when-wet flooring in this area of the *NCL Joy* on November 8, 2024. The stewards who were assigned to that area of the slippery-when-wet polished floor on the narrowly configured and poorly lit enclosed staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite on that day failed to: (a) inspect on a frequent and timely basis for wetness or a water accumulation; (b) clean and dry wetness or a water accumulation; (c) cordon or block off the area with the wetness on that flooring; and other means of inspecting and maintaining the dangerous condition of the slippery-when-wet polished flooring and staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite, where Plaintiff slipped and fell on November 8, 2024. NCL's stewards or cleaners failed to inspect and/or maintain the area to prevent slip and falls in compliance with NCL's maintenance program as alleged in paragraph 41.

58. These cleaning personnel, that is the stewards assigned to this area and on that day and the Assistant Housekeeping Manager and Housekeeping Manager in charge of these personnel at that time were acting within the course and scope of their employment with the Defendant NCL. The Defendant NCL is therefore liable and responsible vicariously for the negligence of these cleaning personnel.

59. **PROXIMATE CAUSE.** The failure of these NCL cleaning personnel to inspect and/or maintain the flooring in the subject area onboard the *NCL Joy in* a safe manner, proximately caused Plaintiff's injuries. These failures of inspection and maintenance allowed for water to accumulate and remain on the slippery-when-wet narrowly configured and poorly lit enclosed staircase located on Deck 16 leading to the cold plunge pool of the Thermal Suite. Had NCL's

cleaning personnel properly maintained and inspected the slippery-when-wet polished flooring and staircase, Plaintiff would have never slipped, fallen, and been injured on *NCL Joy* on November 8, 2024.

60.     **DAMAGES.**  As a direct result of the active negligence of Defendant's cleaning personnel described above, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against NCL under the theory of vicarious liability for damages recoverable under the General Maritime Law and state law including, but not limited to, economic damages including medical treatment, psychological treatment, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.


[INTENTIONALLY LEFT BLANK]

### COUNT III
### NEGLIGENT FAILURE TO WARN - NCL
### (Direct Liability for Negligence Under General Maritime Law)

61.     The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 44 above.

62.     This is an action against NCL for its negligent failure to warn passengers, including Plaintiff, of its hazards, risks or dangers onboard the *NCL Joy*.

63.     **DUTIES OWED BY NCL.**   NCL owes non-delegable duties to exercise reasonable care under the circumstances for the safety of its passengers. NCL's duties of care includes warning passengers who come into the area of the slippery-when-wet polished staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite of the presence of a water accumulation by: (a) posting warning signs; (b) placing physical barriers; (c) stationing personnel at the site of the water or wetness, and other means; to warn passengers of dangerous conditions onboard the *NCL Joy,* including the dangerous condition of the slippery-when-wet dark polished flooring and enclosed steps on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

64.     **NOTICE.**   As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

65.     **NCL BREACHED ITS DUTY.** NCL breached its duty to warn Plaintiff of the dangerous conditions on board the *NCL Joy*, including where Plaintiff slipped and fell on November 8, 2024.  NCL breached its duties to the Plaintiff by its actions and conduct.  NCL failed to warn passengers who come into the area of the slippery-when-wet dark and enclosed staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite of the presence of a water accumulation by failing to:  (a) post warning signs; (b) place physical barriers; (c) station personnel at the site of the water or wetness, and other means; and failed to warn passengers of dangerous conditions onboard the *NCL Joy,* including the dangerous condition created by the slippery-when-

wet dark polished flooring and enclosed steps on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

66. **PROXIMATE CAUSE.** NCL's failure to reasonably warn Plaintiff of the dangerous conditions on board the *NCL Joy*, including the slippery-when-wet dark and enclosed staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite, where Plaintiff slipped and fell on November 8, 2024, proximately caused the Plaintiff's injuries. Had NCL reasonably warned Plaintiff of the dangerous condition, Plaintiff would have been aware of the dangerous condition and never would have use the dangerously slippery-when-wet staircase.  Plaintiff therefore would never have slipped, fallen, and been injured onboard the *NCL Joy* on November 8, 2024.

67. **DAMAGES.**  As a direct result of Defendant's negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against NCL for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of

capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT IV
## NEGLIGENT FAILURE TO WARN - NCL
### (Vicarious Liability for Negligence
### *Respondeat Superior* Under General Maritime Law)

68.     The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 44 above.

69.     This is an action against NCL for its vicarious liability for the active negligence of its stewards (aka cleaners) who were assigned, scheduled, instructed, and/or directed to warn passengers including the Plaintiff of dangerous conditions of the slippery-when-wet dark and poorly lit narrowly constructed staircase on Deck 16 leading to the cold plunge pool of The Thermal Suite onboard *NCL Joy* on November 8, 2024, and the negligence of the supervisors of those particular stewards assigned on that day and at that location, that is the Assistant Housekeeping Manager and Housekeeping Manager.

70.     **DUTIES OWED BY NCL.**  NCL's personnel described herein owed duties to exercise reasonable care under the circumstances for the safety of NCL's passengers arising from the employer-employee relationship between NCL and its cleaning personnel. The cleaners or stewards who were assigned to this ship and to this Deck 16 on the day of this fall had a duties to warn passengers who come into the area of the slippery-when-wet dark colored and narrowly constructed staircase within the Thermal Suite of the presence of a water accumulation included but is not limited to:  (a) posting warning signs, (b) placing physical barriers, (c) stationing personnel at the site of the water or wetness, and other means; to warn passengers of dangerous conditions onboard the *NCL Joy*, including the dangerous conditions of the slippery-when-wet

dark steps leading to the cold plunge pool on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

71.     NCL's shipboard assistant housekeeping manager or supervisor create shift schedules and section assignments that designate specific crewmembers to inspect, maintain and warn passengers of hazards, risks or dangers in their designated areas including the subject area's flooring. Further, at all times material hereto, said crewmembers were employees of the Defendant and were part of the larger class of crewmembers on the housekeeping department and which are often referred to as stewards or cleaners. An NCL assistant housekeeping manager or supervisor scheduled, designated, assigned, instructed and/or directed the stewards or cleaners to warn passengers of dangerous conditions on the staircase on Deck 16, which included but was not limited to the area near the cold plunge pool on Deck 16, onboard *NCL Joy* on November 8, 2024.

72.     The stewards assigned to the subject area where Plaintiff slipped and fell were responsible for being aware of the surroundings, regularly placing signs, stickers, blocking off areas, and other visual or audible notices of dangerous conditions to prevent slip and falls in compliance with NCL's maintenance program as alleged in paragraph 41.

73.     **THESE CLEANING PERSONNEL BREACHED THEIR DUTIES.**  NCL's stewards or cleaners breached their duties to warn Plaintiff of the dangerous conditions on the subject area, onboard *NCL Joy* on November 8, 2024, where Plaintiff slipped and fell.

74.     On the day of the incident NCL's stewards or cleaners scheduled, assigned, instructed and/or directed to the subject area failed to warn the Plaintiff of dangerous conditions of the slippery-when-wet, dark-colored, narrowly constructed, and poorly lit steps in the area where Plaintiff fell. NCL's stewards or cleaners failed to warn passengers who came into the area of the slippery-when-wet, dark-colored staircase and of the presence of a water accumulation by failing to: (a) post warning signs; (b) place physical barriers; (c) station personnel at the site of the water or wetness

staircase on Deck 16 leading to cold plunge pool of the Thermal Suite where Plaintiff slipped and fell on November 8, 2024.

75.     These cleaning personnel, that is the stewards assigned to this area and on that day and the Assistant Housekeeping Manager and Housekeeping Manager in charge of these personnel at that time were acting within the course and scope of their employment with the Defendant NCL. Accordingly, the Defendant NCL is liable and responsible vicariously for the negligence of these cleaning personnel.

76.     **PROXIMATE CAUSE.**   NCL's steward or cleaner's failure to reasonably warn Plaintiff of the dangerous conditions on board the *NCL Joy* including the area on Deck 16, where Plaintiff slipped and fell on November 8, 2024, proximately caused the Plaintiff's injuries. Had NCL's stewards or cleaners reasonably warned Plaintiff of the dangerous conditions, Plaintiff would have been aware of the dangerous condition and never would have use the dangerously slippery-when-wet staircase therefore would never have slipped, fallen, and been injured onboard the *NCL Joy* on November 8, 2024.

77.     **DAMAGES.**  As a result of NCL's crew's negligent failure to warn, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against NCL under the theory of vicarious liability for damages recoverable under the General Maritime Law and state law including but not

limited to economic damages including medical treatment, psychological treatment, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT V**
**NEGLIGENT TRAINING OF PERSONNEL - NCL**
**(Direct Liability for Negligence Under General Maritime Law)**

78.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 44 above.

79.     This is an action against NCL for its negligent training of shipboard crew members.

80.     **DUTIES OWED BY NCL.** NCL owes duties to exercise reasonable care under the circumstances for the safety of its passenger. NCL's duties of care includes but is not limited to: (a) teaching shipboard crew how to inspect for puddles or water accumulation; (b) teaching shipboard crew how frequently to inspect for water puddles or water accumulation; (c) teaching crew how to properly record inspections which ensure frequency of inspection is followed and/or maintained; (d) teaching shipboard crew where puddles or water accumulations continuously and/or repetitively accumulate; (e) teaching shipboard crew how to warn guests about wet slippery floors; (f) teaching shipboard crew how to properly mark, cordon off and/or provide visual cues to alert guests that floors may be wet and slippery; (g) teaching shipboard crew how to reasonably clean and dry floors in a safe condition; (h) teaching shipboard crew how to test, check and/or otherwise determine whether crew understand how to inspect and maintain floors in a clean and dry condition; (i) teaching shipboard crew how to test, check and/or otherwise determine whether crew understand

how to warn guests to prevent slip and falls and/or of known slippery wet floors; (j) teaching shipboard crew how to test, check and/or otherwise determine whether crew understand NCL's slip and fall prevention program; (k) teaching shipboard crew how often crew should be trained to ensure they understand, remember and retain information from training programs regarding how to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (l) teaching shipboard crew to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (m) teaching shipboard crew to assign sufficient crew to implement and operate its inspection, maintenance, warning and/or slip and fall prevention programs; (n) implementing training programs or materials which provide ongoing training of personnel to sufficiently instill on its employees proper inspecting, cleaning, warning, and blocking off areas where there is wetness or a water accumulation. NCL's duties, as detailed above, extend to the slippery-when-wet flooring on the Thermal Suite onboard the *NCL Joy*, including the specific area where Plaintiff slipped and fell on November 8, 2024.

81.    **NOTICE.**  As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

82.    **NCL BREACHED ITS DUTIES.**  NCL breached its duties of care owed to Plaintiff and was negligent by failing to reasonably train its crew members to inspect, maintain, clean, dry and warn passengers of the dangerous conditions onboard the *NCL Joy* including the subject area where Plaintiff slipped and fell on November 8, 2024.  NCL breached its duties to the Plaintiff by its actions and conduct. NCL failed to reasonably implement or operate its training programs by failing to: (a) teach shipboard crew how to inspect for puddles or water accumulations; (b) teach shipboard crew how frequently to inspect for puddles or water accumulations; (c) teach crew how to properly record inspections which ensure frequency of inspection is followed and/or

maintained; (d) teach shipboard crew where puddles or water accumulations continuously and/or repetitively accumulate; (e) teach shipboard crew how to warn guests about wet slippery floors; (f) teach shipboard crew how to properly mark, cordon off and/or provide visual cues to alert guests that floors may be wet and slippery; (g) teach shipboard crew how to reasonably clean and dry floors in a safe condition; (h) teach shipboard crew how to test, check and/or otherwise determine whether crew understand how to inspect and maintain floors in a clean and dry condition; (i) teach shipboard crew how to test, check and/or otherwise determine whether crew understand how to warn guests to prevent slip and falls and/or of known slippery wet floors; (j) teach shipboard crew how to test, check and/or otherwise determine whether crew understand NCL's slip and fall prevention program; (k) teach shipboard crew how often crew should be trained to ensure they understand, remember and retain information from training programs regarding how to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (l) teach shipboard crew to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (m) teach shipboard crew to assign sufficient crew to implement and operate its inspection, maintenance, warning and/or slip and fall prevention programs; (n) implement training programs or materials which provide ongoing training of personnel to sufficiently instill on its employees  proper inspecting, cleaning, warning, and blocking off areas where there is wetness or a water accumulation.  In doing so, NCL failed to reasonably implement or operate its training programs described in paragraph 41 and incorporated herein.

83.     At the time Plaintiff fell on the slippery-when-wet staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite, the crew that were responsible for warning, cleaning, drying and inspecting, and/or maintaining that area failed to do so. Because those crewmembers were not properly trained, NCL failed to reasonably warn passengers like Plaintiff of the dangerous

conditions on board the *NCL Joy* including the area where Plaintiff slipped and fell on November 8, 2024.  Because those crewmembers were not reasonably trained, those crewmembers also failed to properly inspect, clean, dry and/or otherwise reasonably maintain the area in a safe condition.

84.     **PROXIMATE CAUSE.** NCL's failure to reasonably train its crew to implement or operate its training procedures proximately caused Plaintiff's injuries.  Had NCL reasonably implemented or operated its training programs, the dangerous condition would not have existed. Had NCL reasonably trained its crew members, Plaintiff would have been aware of the dangerous conditions.  Plaintiff therefore would never have slipped, fallen, and been injured onboard the *NCL Joy* on November 8, 2024.

85.     **DAMAGES.**  As a direct result of Defendant's negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against NCL for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including

interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT VI**
**NEGLIGENT DESIGN, CONSTRUCTION**
**AND SELECTION OF MATERIALS - NCL**
**(Direct Liability for Negligence Under General Maritime Law)**

86.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 44 above.

87.     This is an action against NCL for its negligent design, construction and selection of the slippery-when-wet dark colored staircase installed in the subject area.

88.     **DUTIES OWED BY NCL.**  NCL owes duties to exercise reasonable care under the circumstances for its passengers. NCL's duties of care includes: (a) selecting materials which include selecting a floor surface which is suitable and safe for a high volume of foot traffic, continuous exposure to the outdoor elements and wetness and where the inspection and cleaning is at a low interval and amount as is the case on NCL ships; (b) designing and constructing all areas onboard its ships to meet applicable industry standards and to be reasonably safe for their intended use or foreseeable use by its passengers; (c) approving the selection, design and/or construction of its ships only when such industry standards are met in the context of the area's intended or foreseeable use.

89.     The circumstances are that NCL operates 19 cruise ships which includes the *NCL Joy*.  The *NCL Joy* is a part of the Breakaway Class which includes the *Norwegian Bliss, Norwegian Encore* and *Norwegian Escape*. The Norwegian Breakaway Class as well as other ships in NCL's fleet were designed and custom built on the specifications or at the direction of NCL's shoreside New Build Department and other shoreside departments. NCL employs architects, designers, and engineers.  The ship was built in Germany at a shipyard under the constant supervision of NCL's onsite construction managers, designers, architects, and engineers. Under

the contract with the shipyard, NCL has full access to the ship to inspect and to reject any aspect of the design or construction of the ship.  NCL maintains ultimate control under their contract with the shipyard if any aspect of design or construction is unsafe, in violation of International safety codes, or not reasonable under the circumstances. NCL has ultimate control because they participate in the design and because they are onsite during construction. NCL also has ultimate control over design and construction because if their request for a certain design or construction is not carried out correctly or if their request for charges are not carried out NCL can withhold payment. All of NCL ships including the Breakaway Class from bow to stern and across all decks have the express approval from NCL before entering navigable waters.

90.    To attract more adult travelers NCL advertises the Spa services including notifying potential travelers of NCL's Thermal Suite Voyage Pass alerting passengers that they can "… Immerse yourself in the healing waters of the Thalassotherapy and Plunge Pools, then invigorate your body with Rainfall Ritual Showers, the chilling Ice Room and the comforting Dry Sauna."[2]

91.    While some of the Spa facilities onboard NCL's ships may be operated with brand partners, NCL selected which partners to hire, supervises operations, has the right to inspect each facility, is responsible for the maintenance of each Spa as well as provides rules and procedures which each Spa must follow.  The employees who operate these facilities must undergo and are expected to abide by NCL's shipboard rules and procedures which includes slip and fall prevention.

92.    As anticipated and intended by NCL, passengers constantly and repetitively use Spa treatments and the Thermal Suite which many passengers describe as a favorite part of cruising with NCL.

---

[2] *See https://www.ncl.com/cruise-ships/norwegian-joy/whats-on-board/spa#filter=SPA*

93.     The bathers and employees who work in and around the pools, saunas, jacuzzies and other wet amenities within the Thermal Suite track water throughout the Thermal Suite floors.  The constant use of entering and exiting these amenities causes guests to drip, track and cause water to accumulate on the floors.  Over time the dripping and tracking of water can cause large puddles to accumulate on the floors if they are not maintained by staff.

94.     Not only do guests and employees track water over the floors but also apply body products as part of the cruise which can include sunscreens, suntan oils, and suntan lotions while using the Spa and/or other areas of the ship during the cruise. These oils and lotions drip directly onto the floor surface and are washed onto that surface when sunbathers sweat and when they go into these wet amenities and water and/or wet sources drips off and onto the floor carrying the oils and lotions onto the floor along with the water.  This water and the accumulation of oils and lotions causes the floor to be extremely slippery when wet.  This is an ongoing, continuous problem of which NCL is well aware.  For this reason, NCL knew or should have known the design and selection of materials for the interior areas of the Thermal Suites needed to be appropriate, slip resistant and safe for installation in locations subject to heavy passenger traffic and continuous exposure to wetness.

95.     Despite the fact that NCL was aware of these circumstances based on its years of maritime experience and knowledge of prior incidents demonstrating that its Spa wet floors including in the Thermal Suite are not readily apparent and can blend into the floors, NCL employees or agents did little or nothing to address these dangers.  In this case, not only did NCL plan and organize the tour of the Spa, but NCL directed guests through the Thermal Suite despite areas of the floor suffering from accumulations of water.

96.     **NOTICE.**  As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

97.     NCL knew or should have known that the subject area including the flooring it chose and installed on Deck 16, onboard the *NCL Joy* was unreasonably dangerous and slippery when wet.

98.     NCL knew or should have known of the dangerousness of the subject area including the subject staircase flooring since its installation.

99.     **NCL BREACHED ITS DUTIES.**   NCL breached its duties of care owed to Plaintiff and was negligent by selecting, designing and/or constructing, approving, the materials installed on onboard the *NCL Joy* including the subject area where Plaintiff slipped and fell on November 8, 2024. NCL breached its duties to the Plaintiff by its actions and conduct. NCL failed to reasonably design and/or construct, select, approve the materials onboard the *NCL Joy* by failing to: (a) select materials which include selecting a floor surface which is suitable and safe for a high volume of foot traffic, continuous exposure to wetness and where the inspection and cleaning is at a low interval and amount as is the case on NCL ships; (b) design and construct all areas onboard its ships to meet applicable industry standards and to be reasonably safe for their intended use or foreseeable use by its passengers; (c) approve the selection, design and/or construction of its ships only when such industry standards are met in the context of the area's intended or foreseeable use; (d) ensure that the narrowly enclosed stairs are adequately illuminated so that the lighting does not create shadows which obscures or camouflages wet and hazardous conditions. NCL failed to select, design and/or construct and approve materials which complied with industry standards. The design and/or materials NCL chose, selected, approved of, and installed for the subject area on board the *NCL Joy* was unreasonably dangerous.

100.     **PROXIMATE CAUSE.**   NCL's negligent design, construction, and selection of materials for the subject area on board the *NCL's Joy* proximately caused Plaintiff's injuries.  Had

NCL properly designed, constructed and selected the material installed on the subject area onboard the *NCL Joy,* Plaintiff would have never slipped, fallen, and been injured on November 8, 2024.

101.   **DAMAGES.**  As a direct result of Defendant's negligent selection, design and/or construction and approval of materials, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against NCL for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, and lost wages and other compensation in the past, loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT VII
## NEGLIGENT FAILURE TO MAINTAIN – MANDARA SPA
**(Direct Liability for Negligence Under General Maritime Law)**

102.   The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 44 above.

103.    This is an action against Mandara Spa for negligence for failing to maintain, operate, inspect or supervise the Mandara Spa area which included the staircase on Deck 16 leading to cold plunge pool of the Thermal Suite in a reasonably safe condition onboard the *NCL Joy* on November 8, 2024.

104.    Mandara Spa specializes in providing luxury global Spa management for beauty and wellness services in land and at Sea.

105.    Mandara Spa operates the renowned Mandara Spa and Salon services onboard the entire Norwegian Cruise Line fleet. Mandara Spa proudly details it Spa services at Sea and provides a link to Norwegian Cruise Line cruises.

106.    At all times material hereto, Mandara Spa wholly or partially operated, maintained or supervised the Manda Spa services located onboard the *NCL Joy*, where the subject incident occurred.

107.    **DUTIES OWED BY MANDARA SPA.**  Mandara Spa owes duties to exercise reasonable care under the circumstances for the safety of NCL's passengers who use or plan to use the Spa amenities including the cold plunge pool onboard the *NCL Joy*.  Mandara Spa duties arise in part because (a) Mandara Spa personnel, that is agents or employees, were on the Mandara Spa providing guided tours to potential Spa clients to passengers onboard the NCL Joy, and upon information and belief, (b) Mandara Spa entered into a contract, with the expectation for compensation, to provide Spa services to cruise passengers. Among those services is the contrast therapy which requires alternating between hot and cold environments to increase circulation and recovery. The cold plunge pool is a sequential component of a contrast therapy cycle.

108.    Mandara Spa knows that the continuous cycling of guests between the Thermal Suite's contrast therapy and its oil-based treatments (such as massages and aromatherapy oils)

often results in water and oils accumulating and tracking onto the Spa floors, creating hidden dangerously slick flooring conditions.

109.    Mandara Spa owed a duty to its clients, potential clients and passengers onboard NCL including the Plaintiff to:  (a) inspect on a frequent and timely basis for wetness or a water accumulation on the slick, slippery-when-wet dark staircase flooring; (b) clean and dry wetness or a water accumulation on the slick, dark staircase flooring; (c) cordon or block off any area on the slick, staircase floor with wetness or a water accumulation, and other means; (d) perform a safety walkthrough of the Spa including the area where the Plaintiff fell before a tour of the subject area is conducted by NCL employees and/or Mandara Spa employees; (e) maintain records detailing inspection and maintenance of the Spa floors and staircase to ensure the method and frequency used to inspect and maintain do not create a hazardous conditions for NCL passengers; (f) hire sufficient number of cleaning personnel to patrol and inspect the Mandara Spa floors including this one for wetness and water accumulation; onboard the *NCL Joy* in a safe manner, including the subject area where Plaintiff slipped and fell on November 8, 2024, and other means.

110.    **NOTICE.**  As more fully and extensively alleged in the section common to all counts above, Mandara Spa had actual or constructive notice in numerous ways.

111.    **MANDARA SPA BREACHED ITS DUTY.**  Mandara Spa breached its duties of reasonable care to Plaintiff to maintain the slippery walkway floors and dark, narrowly constructed and poorly lit staircase floors on Deck 16 leading to the cold plunge pool of the Thermal Suite onboard the *NCL Joy* on November 8, 2024, where Plaintiff slipped and fell.  Mandara Spa failures include but are not limited to: (a) failing to inspect on a frequent and timely basis for wetness or a water accumulation on the slick, slippery-when-wet staircase flooring; (b) failing to clean and dry wetness or a water accumulation on the slick, slippery-when-wet staircase flooring; (c) failing to cordon or block off any area on the slick, slippery-when-wet staircase floor with wetness or a water

accumulation; (d) failing to perform a safety walkthrough of the Spa including the subject staircase floors where the Plaintiff fell before conducting a tour of the subject area; (e) failing to inspect, audit, supervise its employees to ensure the method and frequency used to inspect and maintain do not create a hazardous conditions for NCL passengers; (f) failing to hire sufficient number of cleaning personnel to patrol and inspect the floors including the subject staircase floors for wetness and water accumulation; including the dark slippery-when-wet staircase floors on Deck 16 leading to the cold plunge pool of the Thermal Suite area onboard the *NCL Joy* where Plaintiff slipped and fell on November 8, 2024, and other means.

112.   **PROXIMATE CAUSE.**   Mandara Spa's failure to inspect and maintain the dark slippery-when-wet staircase floors on Deck 16 leading to the cold plunge pool of the Thermal Suite in the subject area onboard the *NCL Joy* in a safe manner, proximately caused Plaintiff's injuries. The Defendant's negligent inspection and maintenance allowed for wet areas to remain on the dark, narrowly constructed and poorly lit enclosed staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite, rendering the steps slick and dangerously slippery for an extended period of time. Had Mandara Spa properly maintained and inspected the subject area onboard the *NCL Joy*, Plaintiff would have never slipped, fallen, and been injured on *NCL Joy* on November 8, 2024.

113.   **DAMAGES.**   As a direct result of Mandara Spa's negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited

to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against Mandara Spa for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT VIII
### NEGLIGENT FAILURE TO MAINTAIN - MANDARA SPA
**(Vicarious Liability for Negligence of Mandara Spa Employees**
***Respondeat Superior* Under The General Maritime Law)**

114. The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 44 above.

115. This is an action against Mandara Spa for its vicarious liability arising from the active negligence of its Spa attendants (aka "cleaners") who were assigned, scheduled, instructed, and/or directed to inspect and/or maintain the slippery-when-wet flooring including the flooring on the subject staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite, onboard *NCL Joy* on November 8, 2024, and the negligence of the supervisors of those particular stewards assigned on that day and at that location, that is the Assistant Manager and Manager.

116. **DUTIES OWED BY MANDARA SPA ATTENDANTS.**  Mandara personnel described herein owed duties to exercise reasonable care under the circumstances for the safety of

NCL's passengers arising from the relationship between Mandara Spa and its personnel. Mandara Spa employees, cleaners or Spa attendants on the day of this fall had a duty to: (a) inspect on a frequent and timely basis for wetness or a water accumulation on the slick, slippery-when-wet floor; (b) clean and dry for wetness or a water accumulation on the slick, polished floor and staircase; (c) cordon or block off any area on the slick, polished floor and staircase with wetness or a water accumulation, and other means; (d) perform a safety walkthrough of the Spa including the area where the Plaintiff fell before a tour of the subject area was conducted by Mandara Spa employees; and other means.

117.    Mandara Spa shipboard assistant manager or supervisor create shift schedules and section assignments that designate specific employees to inspect and maintain the floors of their designated areas including the slippery-when-wet flooring in the subject area. Mandara's employees assigned to the subject area are part of a larger class of Spa members which are commonly referred to as Spa attendants. Mandara Spa's Assistant Manager and Manager scheduled, designated, assigned, and/or instructed Spa attendants or cleaners to inspect and maintain the slippery-when-wet flooring and staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite, onboard *NCL Joy* on November 8, 2024.

118.    The Spa attendants assigned to the subject area where Plaintiff slipped and fell were responsible for inspecting on a timely and frequent basis areas for wetness or water accumulation, clean and dry areas of wetness or water accumulation, block off areas on the slick, dark, narrowly constructed and poorly lit staircase for wetness or a water accumulation or other means to prevent slip and falls in compliance with Mandara Spa's maintenance program and in adherence to NCL policies and procedures.

119.    **<u>MANDARA SPA ATTENDANTS BREACHED THEIR DUTIES</u>.** Mandara Spa's attendants breached their duties to exercise reasonable care under the circumstances for the

safety of prospective clients of Mandara Spa arising from the employer-employee relationship between Mandara Spa and its personnel. The Spa attendants who were assigned to that area of the slippery-when-wet floor on the narrowly configured and poorly lit enclosed staircase on that day failed to: (a) inspect on a frequent and timely basis for wetness or a water accumulation; (b) clean and dry wetness or a water accumulation; (c) cordon or block off the area with the wetness on that flooring; and other means of inspecting and maintaining the dangerous condition of the slippery-when-wet polished flooring and staircase leading to the cold plunge pool on Deck 16, where Plaintiff slipped and fell on November 8, 2024. Mandara Spa's attendants failed to inspect and/or maintain the area to prevent slip and falls in compliance with Mandara Spa's maintenance program and NCL policy and procedures alleged in paragraph 41.

120. These cleaning personnel, that is the Spa attendants assigned to this area and on that day, the Assistant Manager and Manager in charge of these personnel at that time were acting within the course and scope of their employment with Mandara Spa. Accordingly, the Defendant Mandara Spa is liable and responsible vicariously for the negligence of these cleaning personnel.

121. **PROXIMATE CAUSE.** The failure of these Mandara Spa attendants personnel to inspect and/or maintain the flooring in the subject area onboard the *NCL Joy in* a safe manner, proximately caused Plaintiff's injuries. These failures of inspection and maintenance allowed for water to accumulate and remain on the slippery-when-wet narrowly configured and poorly lit enclosed staircase located within leading to the cold plunge pool of the Thermal Suite in Deck 16. Had Mandara Spa's attendants properly maintained and inspected the slippery-when-wet flooring and subject staircase, Plaintiff would have never slipped, fallen, and been injured on *NCL Joy* on November 8, 2024.

122. **DAMAGES.** As a direct result of the active negligence of Mandara Spa's attendants described above, the Plaintiff has suffered damages in the past and will continue to

suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against Mandara Spa under the theory of vicarious liability for damages recoverable under the General Maritime Law and state law including but not limited to economic damages including medical treatment, psychological treatment, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT IX
## NEGLIGENT FAILURE TO WARN – MANDARA SPA
### (Direct Liability for Negligence Under General Maritime Law)

123.    The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 44 above.

124.    This is an action against Mandara Spa for its negligent failure to warn passengers, including Plaintiff, of its hazards, risks or dangers in the Mandara Spa onboard the *NCL Joy*.

125.    Mandara Spa specializes in providing luxury global spa management for beauty and wellness services in land and at Sea.

126.     Mandara Spa proudly details it Spa services at Sea and provides a link to Norwegian Cruise Line cruises.

127.     At all times material hereto, Mandara Spa wholly or partially operated, maintained or supervised the Mandara Spa services located onboard the NCL Joy, where the subject incident occurred.

128.     **DUTIES OWED BY MANDRA SPA.**  Mandara Spa owes duties to exercise reasonable care under the circumstances for the safety of NCL's passengers who use or plan to use the Spa amenities including the cold plunge pool onboard the NCL Joy.  Mandara Spa duties arise in part because (a) Mandara Spa personnel, that is agents or employees, were on the Mandara Spa providing guided tours to potential Spa clients to passengers onboard the NCL Joy, and upon information and belief (b) Mandara Spa entered into a contract, with the expectation for compensation, to provide Spa services to cruise passengers. Among those services is the contrast therapy which requires alternating between hot and cold environments increase circulation and recovery. The cold plunge pool is a sequential component of a contract therapy cycle.

129.     Mandara Spa knows that the continuous cycling of guests between the Thermal Suite's water features (like hot tubs and cold plunge pool) and its oil-based treatments (such as massages and aromatherapy oils) often results in water and oils accumulating and tracking onto the Spa floors, creating slick flooring conditions.

130.     Mandara Spa owed a duty to its clients, potential clients and passengers onboard NCL including the Plaintiff to warn of the presence of a water accumulation by: (a) posting warning signs; (b) placing physical barriers; (c) stationing personnel at the site of the water or wetness, and other means; to warn passengers of dangerous conditions in the Mandara Spa located onboard the *NCL Joy,* including the dangerous condition of the slippery-when-wet dark, narrowly

constructed and poorly light enclosed staircase on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

131. **NOTICE.** As more fully and extensively alleged in the section common to all counts above, the Mandara Spa had actual or constructive notice in numerous ways.

132. **MANDARA SPA BREACHED ITS DUTY.** Mandara Spa breached its duty to warn Plaintiff of the dangerous conditions on board the *NCL Joy*, including where Plaintiff slipped and fell on November 8, 2024. Mandara Spa breached its duties to the Plaintiff by its actions and conduct. Mandara Spa failed to warn passengers who come into the area of the slippery-when-wet dark polished flooring on the subject staircase by failing to: (a) post warning signs; (b) place physical barriers; (c) station personnel at the site of the water or wetness, and other means; and failed to warn Plaintiff of dangerous conditions on the staircase on Deck 16 of the Mandara Spa Thermal Suite onboard the *NCL Joy,* including the dangerous condition created by the slippery-when-wet dark polished flooring and enclosed staircase on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

133. **PROXIMATE CAUSE.** Mandara Spa's failure to reasonably warn Plaintiff of the dangerous conditions within the Thermal Suites onboard the *NCL Joy*, including the slippery-when-wet polished flooring staircase, where Plaintiff slipped and fell on November 8, 2024, proximately caused the Plaintiff's injuries. Had Mandara Spa reasonably warned Plaintiff of the dangerous condition, Plaintiff would have been aware of the dangerous condition and never would have walked onto the dangerously slippery-when-wet staircase flooring. Plaintiff therefore would never have slipped, fallen, and been injured onboard the *NCL Joy* on November 8, 2024.

134. **DAMAGES.** As a direct result of Mandara Spa's negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other

related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against Mandara Spa for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT X
## NEGLIGENT FAILURE TO WARN – MANDARA SPA
### (Vicarious Liability for Negligence
### *Respondeat Superior* Under General Maritime Law)

135.     The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 44 above.

136.     This is an action against Mandara Spa for its vicarious liability for the active negligence of its Spa attendants (aka cleaners) who were assigned, scheduled, instructed, and/or directed to warn passengers including the Plaintiff of dangerous conditions of the slippery-when-wet, dark-colored, and poorly lit narrowly constructed staircase on Deck 16 leading to the old

plunge pool of the Thermal Suite Deck 16, onboard *NCL Joy* on November 8, 2024, and the negligence of the supervisors of those particular stewards assigned on that day and at that location, that is the Assistant Manager and Manager.

137.   **DUTIES OWED BY MANDARA SPA ATTENDANTS.** Mandara Spa attendants described herein owed duties to exercise reasonable care under the circumstances for the safety of potential clients of Mandara Spa and NCL passengers arising from the relationship between Mandara Spa, its personnel and NCL.  Mandara Spa's employees duties of care includes warning passengers who come into the area of the slippery-when-wet flooring and steps within the Thermal Suite of the presence of a water accumulation by: (a) posting warning signs; (b) placing physical barriers; (c) stationing personnel at the site of the water or wetness, and other means; to warn passengers of dangerous conditions within the Mandara Spa onboard the *NCL Joy,* including the dangerous condition of the slippery-when-wet dark flooring and enclosed steps on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

138.   Mandara Spa's shipboard manager or supervisor create shift schedules and section assignments that designate specific crewmembers to inspect, maintain and warn passengers of hazards, risks or dangers in their designated areas including the subject area's flooring.  Further, at all times material hereto, said Spa personnel were employees of the Mandara Spa and were part of the larger class of Spa members which are often referred to Spa attendants. Mandara Spa's Assistant Manager and Manager scheduled, designated, assigned, and instructed Spa attendants or cleaners to inspect and maintain the slippery-when-wet flooring and staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite, onboard *NCL Joy* on November 8, 2024.

139.   The Spa attendants that were assigned to the subject area where Plaintiff slipped and fell were responsible for being aware of the surroundings, regularly placing signs, stickers, blocking off areas, and other visual or audible notices of dangerous conditions to prevent slip and falls in

compliance with Mandara Spa's maintenance and in adherence to NCL policies and procedures alleged in paragraph 41.

140.   **MANDARA SPA ATTENDANTS BREACHED THEIR DUTIES.**   Mandara Spa's attendants breached their duties to exercise reasonable care under the circumstances for the safety of prospective clients of Mandara Spa arising from the employer-employee relationship between Mandara Spa and its personnel.

141.   On the day of the incident Mandara Spa's attendants or cleaners scheduled, assigned, instructed and/or directed to the subject area failed to warn the Plaintiff of dangerous conditions of the slippery-when-wet dark colored, narrowly constructed and poorly lit staircase in the area where Plaintiff fell.  Mandara Spa attendants or cleaners failed to warn passengers who came into the area of the slippery-when-dark colored flooring and of the presence of a water accumulation by failing to: (a) post warning signs; (b) place physical barriers; (c) station personnel at the site of the water or wetness stairs on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

142.   These cleaning personnel, that is the Spa attendants assigned to this area and on that day, the Assistant Manager and Manager in charge of these personnel at that time were acting within the course and scope of their employment with Mandara Spa. Accordingly, the Defendant Mandara Spa is liable and responsible vicariously for the negligence of these cleaning personnel.

143.   **PROXIMATE CAUSE.**   Mandara Spa personnel's failure to reasonably warn Plaintiff of the dangerous conditions onboard the *NCL Joy* including the subject staircase, where Plaintiff slipped and fell on November 8, 2024, proximately caused the Plaintiff's injuries. Had Mandara Spa's stewards or cleaners reasonably warned Plaintiff of the dangerous conditions, Plaintiff would have been aware of the dangerous condition and never would have used the dangerous staircase. Plaintiff therefore would never have slipped, fallen, and been injured in the Mandara Spa onboard the *NCL Joy* on November 8, 2024.

144.   **DAMAGES.**  As a result of Mandara Spa's personnel's  negligent failure to warn, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against Mandara Spa under the theory of vicarious liability for damages recoverable under the General Maritime Law and state law including but not limited to economic damages including medical treatment, psychological treatment, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

### COUNT XI
### NEGLIGENT TRAINING OF PERSONNEL – MANDARA SPA
**(Direct Liability for Negligence Under General Maritime Law)**

145.   The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 44 above.

146.   This is an action against Mandara Spa for its negligent training of Spa attendants or cleaning members.

147.   **DUTIES OWED BY MANDARA SPA.**  Mandara Spa owes duties to exercise reasonable care under the circumstances for the safety of NCL's passengers who use or plan to use the Spa amenities including the cold plunge pool onboard the NCL Joy.  Mandara Spa duties arise in part because (a) Mandara Spa personnel, that is agents or employees, were on the Mandara Spa providing guided tours to potential Spa clients to passengers onboard the NCL Joy, and upon information and belief (b) Mandara Spa entered into a contract, with the expectation for compensation, to provide Spa services to cruise passengers. Among those services is the contrast therapy which require alternating between hot and cold environments increase circulation and recovery. The cold plunge pool is a sequential component of a contract therapy cycle.

148.   Mandara Spa knows that the continuous cycling of guests between the Thermal Suite's water features (like hot tubs and cold plunge pool) and its oil-based treatments (such as massages and aromatherapy oils) often results in water and oils accumulating and tracking onto the Spa floors, creating hidden slick flooring conditions.

149.   Mandara Spa's duties of care includes but is not limited to: (a) teaching attendants how to inspect for puddles or water accumulation; (b) teaching attendants how frequently to inspect for water puddles or water accumulation; (c) teaching attendants  how to properly record inspections which ensure frequency of inspection is followed and/or maintained; (d) teaching attendants where puddles or water accumulations continuously and/or repetitively accumulate; (e) teaching attendants how to warn guests about wet slippery floors; (f) teaching attendants how to properly mark, cordon off and/or provide visual cues to alert guests that floors may be wet and slippery; (g) teaching attendants how to reasonably clean and dry floors in a safe condition; (h) teaching attendants how to test, check and/or otherwise determine whether crew understand how to inspect and maintain floors in a clean and dry condition; (i) teaching attendants how to test, check and/or otherwise determine whether crew understand how to warn guests to prevent slip and falls and/or of known slippery wet

floors; (j) teaching attendants how to test, check and/or otherwise determine whether Mandara Spa attendants understand slip and fall prevention programs; (k) teaching attendants how often crew should be trained to ensure they understand, remember and retain information from training programs regarding how to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors within the Spa; (l) teaching attendants how to comply with industry standards regarding how to inspect and maintain the flooring within the Spa and warn passengers of wet floors and the dangerousness of wet floors; (m) teaching attendants to assign sufficient Spa attendants to implement and operate its inspection, maintenance, warning and/or slip and fall prevention programs; (n) implementing training programs or materials which provide ongoing training of personnel to sufficiently instill on its employees proper inspecting, cleaning, warning, and blocking off areas where there is wetness or a water accumulation. Mandara Spa's duties, as detailed above, extend to the narrowly constructed and poorly light enclosed staircase on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

150.    **NOTICE.**  As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

151.    **MANDARA SPA BREACHED ITS DUTIES.**  Mandara Spa breached their duties of care owed to Plaintiff and was negligent by failing to reasonably train its Spa attendants to inspect, maintain, clean, dry and warn passengers of the dangerous conditions in the Mandara Spa located onboard the *NCL Joy* including the subject area where Plaintiff slipped and fell on November 8, 2024.  Mandara Spa breached its duties to the Plaintiff by its actions and conduct. Mandara Spa failed to reasonably implement or operate its training programs by failing to: (a) teach attendants how to inspect for puddles or water accumulations; (b) teach attendants how frequently to inspect for puddles or water accumulations; (c) teach attendants to properly record inspections which ensure frequency of inspection is followed and/or maintained; (d) teach attendants where puddles or

water accumulations continuously and/or repetitively accumulate; (e) teach attendants how to warn guests about wet slippery floors; (f) teach attendants how to properly mark, cordon off and/or provide visual cues to alert guests that floors may be wet and slippery; (g) teach attendants how to reasonably clean and dry floors in a safe condition; (h) teach attendants how to test, check and/or otherwise determine whether crew understand how to inspect and maintain floors in a clean and dry condition; (i) teach attendants how to test, check and/or otherwise determine whether crew understand how to warn guests to prevent slip and falls and/or of known slippery wet floors; (j) teach attendants how to test, check and/or otherwise determine whether Spa attendants understand Mandara Spa's slip and fall prevention program; (k) teach attendants how often crew should be trained to ensure they understand, remember and retain information from training programs regarding how to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (l) teach attendants how to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (m) teach attendants to assign sufficient attendants to implement and operate its inspection, maintenance, warning and/or slip and fall prevention programs; (n) implement training programs or materials which provide ongoing training of personnel to sufficiently instill on its employees proper inspecting, cleaning, warning, and blocking off areas where there is wetness or a water accumulation.  In doing so, Mandara Spa failed to reasonably implement or operate in accordance with the contractual responsibilities with NCL.

152.    At the time Plaintiff fell on the slippery-when-wet staircase on Deck 16, the attendants that were responsible for warning, cleaning, drying and inspecting, and/or maintaining that area failed to do so.  Because those attendants were not properly trained, Mandara Spa failed to reasonably warn passengers like Plaintiff of the dangerous conditions on board the *NCL Joy* including the area where Plaintiff slipped and fell on November 8, 2024.  Because those attendants

were not reasonably trained, those crewmembers also failed to properly inspect, clean, dry and/or otherwise reasonably maintain the area in a safe condition.

153. **PROXIMATE CAUSE.** Mandara Spa's failure to reasonably train its crew to implement or operate its training procedures proximately caused Plaintiff's injuries. Had Mandara reasonably implemented or operated its training programs, the dangerous condition would not have existed. Had Mandara Spa reasonably trained its crew members; Plaintiff would have been aware of the dangerous conditions. Plaintiff therefore would never have slipped, fallen, and been injured on the area on November 8, 2024.

154. **DAMAGES.** As a direct result of Mandara Spa's negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against Mandara Spa for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject

incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT XII
## NEGLIGENT FAILURE TO MAINTAIN – OSW U.S.
### (Direct Liability for Negligence Under General Maritime Law)

155.    The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 44 above.

156.    This is an action against OSW U.S. for negligence for failing to maintain, operate, inspect or supervise the Spa area which included the staircase on Deck 16 leading to cold plunge pool of the Thermal Suite in a reasonably safe condition onboard the *NCL Joy* on November 8, 2024.

157.    OSW U.S. specializes in providing luxury Spa management and global health and wellness services, offering beauty and wellness treatments both on land and at sea.

158.    At all times material hereto, OSW U.S. wholly or partially operated, maintained or supervised the Manda Spa services including cleaning personnel and/or products onboard the NCL Joy, where the subject incident occurred.

159.    **DUTIES OWED BY OSW U.S.**  OSW U.S. owes duties to exercise reasonable care under the circumstances for the safety of NCL's passengers who use or plan to use the Spa amenities including the cold plunge pool onboard the NCL Joy.  OSW U.S. duties arise in part because (a) OSW U.S. personnel, that is agents or employees, were on the Spa providing guided tours to potential Spa clients to passengers onboard the NCL Joy, and upon information and belief (b) OSW U.S. entered into a contract, with the expectation for compensation, to provide Spa services to cruise passengers. Among those services is the contrast therapy, alternating between hot and cold environments which increase circulation and recovery. The cold plunge pool is a

sequential component of a contract therapy cycle. Further, those services include maintaining and cleaning the floors in the Spa which include the staircase where the subject incident took place.

160.    OSW U.S. contrast therapy and its oil-based treatments (such as massages and aromatherapy oils) often results in water and oils accumulating and tracking onto the Spa floors, creating slick flooring conditions.

161.    OSW U.S. owed a duty to its clients, potential clients and passengers onboard NCL including the Plaintiff to:  (a) inspect on a frequent and timely basis for wetness or a water accumulation on the slick, slippery-when-wet dark staircase flooring; (b) clean and dry wetness or a water accumulation on the slick, dark staircase flooring; (c) cordon or block off any area on the slick, staircase floor with wetness or a water accumulation, and other means; (d) perform a safety walkthrough of the Spa including the area where the Plaintiff fell before a tour of the subject area is conducted by NCL employees and/or OSW U.S. employees; (e) maintain records detailing inspection and maintenance of the Spa floors and staircase to ensure the method and frequency used to inspect and maintain do not create a hazardous conditions for NCL passengers; (f) hire sufficient number of cleaning personnel to patrol and inspect the Spa floors including this one for wetness and water accumulation; onboard the *NCL Joy* in a safe manner, including the subject area where Plaintiff slipped and fell on November 8, 2024, and other means.

162.    **NOTICE.**  As more fully and extensively alleged in the section common to all counts above, Spa had actual or constructive notice in numerous ways.

163.    **OSW U.S. BREACHED ITS DUTY.**  OSW U.S. breached its duties of reasonable care to Plaintiff to maintain the slippery walkway floors and dark, narrowly constructed and poorly lit staircase floors on Deck 16 leading to the cold plunge pool of the Thermal Suite onboard the *NCL Joy* on November 8, 2024, where Plaintiff slipped and fell.  OSW U.S. failures include but are not limited to: (a) failing to inspect on a frequent and timely basis for wetness or a water

accumulation on the slick, slippery-when-wet staircase flooring; (b) failing to clean and dry wetness or a water accumulation on the slick, slippery-when-wet staircase flooring; (c) failing to cordon or block off any area on the slick, slippery-when-wet staircase floor with wetness or a water accumulation; (d) failing to perform a safety walkthrough of the Spa including the subject staircase floors where the Plaintiff fell before conducting a tour of the subject area; (e) failing to inspect, audit, supervise its employees to ensure the method and frequency used to inspect and maintain do not create a hazardous conditions for NCL passengers; (f) failing to hire sufficient number of cleaning personnel to patrol and inspect the floors including the subject staircase floors for wetness and water accumulation; including the dark slippery-when-wet staircase floors on Deck 16 leading to the cold plunge pool of the Thermal Suite area onboard the *NCL Joy* where Plaintiff slipped and fell on November 8, 2024, and other means.

164.    **PROXIMATE CAUSE.**  OSW U.S. failure to inspect and maintain the dark slippery-when-wet staircase floors on Deck 16 leading to the cold plunge pool of the Thermal Suite in the subject area onboard the *NCL Joy* in a safe manner, proximately caused Plaintiff's injuries. The Defendant's negligent inspection and maintenance allowed wet areas to remain on the dark, narrowly constructed and poorly lit enclosed staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite, rendering the steps slick and dangerously slippery for an extended period of time. Had OSW U.S. properly maintained and inspected the subject area onboard the *NCL Joy*, Plaintiff would have never slipped, fallen, and been injured on *NCL Joy* on November 8, 2024.

165.    **DAMAGES.**  As a direct result of OSW U.S. negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The

non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against OSW U.S. for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT XIII
## NEGLIGENT FAILURE TO MAINTAIN – OSW U.S.
### (Vicarious Liability for Negligence OSW U.S.
### *Respondeat Superior* Under The General Maritime Law)

166.  The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 44 above.

167.  This is an action against OSW U.S. for its vicarious liability arising from the active negligence of its Spa attendants (aka "cleaners") who were assigned, scheduled, instructed, and/or directed to inspect and/or maintain the slippery-when-wet flooring including the flooring on the subject staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite, onboard *NCL Joy* on November 8, 2024, and the negligence of the supervisors of those particular stewards assigned on that day and at that location, that is the Assistant Manager and Manager.

168.  **DUTIES OWED BY OSW U.S. ATTENDANTS.**  OSW U.S. personnel described herein owed duties to exercise reasonable care under the circumstances for the safety of NCL's

passengers arising from the relationship between OSW U.S. Spa and its personnel. OSW U.S. employees, cleaners or Spa attendants on the day of this fall had a duty to: (a) inspect on a frequent and timely basis for wetness or a water accumulation on the slick, slippery-when-wet floor; (b) clean and dry for wetness or a water accumulation on the slick, polished floor and staircase; (c) cordon or block off any area on the slick, polished floor and staircase with wetness or a water accumulation, and other means; (d) perform a safety walkthrough of the Spa including the area where the Plaintiff fell before a tour of the subject area was conducted by OSW U.S. employees; and other means.

169.    OSW U.S. shipboard assistant manager or supervisor create shift schedules and section assignments that designate specific employees to inspect and maintain the floors of their designated areas including the slippery-when-wet flooring in the subject area. OSW U.S. employees assigned to the subject area are part of a larger class of Spa employees which are commonly referred to as Spa attendants. OSW U.S. Assistant Manager and Manager scheduled, designated, assigned, instructed and/or Spa attendants or cleaners to inspect and maintain the slippery-when-wet flooring and staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite, onboard *NCL Joy* on November 8, 2024.

170.    The Spa attendants assigned to the subject area where Plaintiff slipped and fell were responsible for inspecting on a timely and frequent basis areas for wetness or water accumulation, clean and dry areas of wetness or water accumulation, block off areas on the slick, dark, narrowly constructed and poorly lit staircase for wetness or a water accumulation or other means to prevent slip and falls in compliance with OSW U.S.' s maintenance program and in adherence to NCL policies and procedures alleged in paragraph 41.

171.    **OSW U.S. ATTENDANTS BREACHED THEIR DUTIES.** OSW U.S. attendants breached their duties to exercise reasonable care under the circumstances for the safety of

prospective clients of OSW U.S. arising from the employer-employee relationship between OSW U.S. and its personnel. Specifically, the Spa attendants who were assigned to that area of the slippery-when-wet floor on the narrowly configured and poorly lit enclosed staircase on that day failed to: (a) inspect on a frequent and timely basis for wetness or a water accumulation; (b) clean and dry wetness or a water accumulation; (c) cordon or block off the area with the wetness on that flooring; and other means of inspecting and maintaining the dangerous condition of the slippery-when-wet polished flooring and staircase leading to the cold plunge pool on Deck 16, where Plaintiff slipped and fell on November 8, 2024. OSW U.S. Spa attendants failed to inspect and/or maintain the area to prevent slip and falls in compliance with OSW U.S. maintenance program and NCL policy and procedures.

172.    These cleaning personnel, that is the Spa attendants assigned to this area and on that day, the Assistant Manager and Manager in charge of these personnel at that time were acting within the course and scope of their employment with OSW U.S. Accordingly, the Defendant OSW U.S. is liable and responsible vicariously for the negligence of these cleaning personnel.

173.    **PROXIMATE CAUSE.**   The failure of these OSW U.S. attendants personnel to inspect and/or maintain the flooring in the subject area onboard the *NCL Joy in* a safe manner, proximately caused Plaintiff's injuries. These failures of inspection and maintenance allowed for water to accumulate and remain on the slippery-when-wet narrowly configured and poorly lit enclosed staircase leading to the cold plunge pool of the Thermal Suite on Deck 16. Had OSW U.S. attendants properly maintained and inspected the slippery-when-wet flooring and subject staircase, Plaintiff would have never slipped, fallen, and been injured on *NCL Joy* on November 8, 2024.

174.    **DAMAGES.**  As a direct result of the active negligence of OSW U.S. attendants described above, the Plaintiff has suffered damages in the past and will continue to suffer damages

in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against OSW U.S. under the theory of vicarious liability for damages recoverable under the General Maritime Law and state law including but not limited to economic damages including medical treatment, psychological treatment, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT XIV
## NEGLIGENT FAILURE TO WARN – OSW U.S.
### (Direct Liability for Negligence Under General Maritime Law)

175.     The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 44 above.

176.     This is an action against OSW U.S. for its negligent failure to warn passengers, including Plaintiff, of its hazards, risks or dangers in the Spa onboard the *NCL Joy*.

177.     OSW U.S. specializes in providing luxury Spa management and global health and wellness services, offering beauty and wellness treatments both on land and at sea.

178.     At all times material hereto, OSW U.S. wholly or partially operated, maintained or

supervised the Spa services including personnel and/or products onboard the NCL Joy, where the subject incident occurred.

179.   **DUTIES OWED BY OSW U.S.**   OSW U.S. owes duties to exercise reasonable care under the circumstances for the safety of NCL's passengers who use or plan to use the Spa amenities including the cold plunge pool onboard the NCL Joy. OSW U.S. duties arise in part because (a) OSW U.S. personnel, that is agents or employees, were on the Spa providing guided tours to potential Spa clients to passengers onboard the NCL Joy, and upon information and belief (b) OSW U.S. entered into a contract, with the expectation for compensation, to provide Spa services to cruise passengers. Among those services is the contrast therapy, alternating between hot and cold environments increase circulation and recovery. The cold plunge pool is a sequential component of a contract therapy cycle.

180.   OSW U.S. knows that the continuous cycling of guests between the Thermal Suite's contrast therapy and its oil-based treatments (such as massages and aromatherapy oils) often results in water and oils accumulating and tracking onto the Spa floors, creating slick flooring conditions.

181.   OSW U.S. owed a duty to its clients, potential clients and passengers onboard NCL including the Plaintiff to warn of the presence of a water accumulation by: (a) posting warning signs; (b) placing physical barriers; (c) stationing personnel at the site of the water or wetness, and other means; to warn passengers of dangerous conditions in the OSW U.S. located onboard the *NCL Joy,* including the dangerous condition of the slippery-when-wet dark, narrowly constructed and poorly light enclosed staircase on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

182.   **NOTICE.**   As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

183. **OSW U.S. BREACHED ITS DUTY.** OSW U.S. breached its duty to warn Plaintiff of the dangerous conditions on board the *NCL Joy*, including where Plaintiff slipped and fell on November 8, 2024. OSW U.S. breached its duties to the Plaintiff by its actions and conduct. OSW U.S. failed to warn passengers who come into the area of the slippery-when-wet dark polished flooring on the subject staircase by failing to: (a) post warning signs; (b) place physical barriers; (c) station personnel at the site of the water or wetness, and other means; and failed to warn Plaintiff of dangerous conditions on the staircase on Deck 16 of the Spa's Thermal Suite onboard the *NCL Joy,* including the dangerous condition created by the slippery-when-wet dark polished flooring and enclosed staircase on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

184. **PROXIMATE CAUSE.** OSW U.S. failure to reasonably warn Plaintiff of the dangerous conditions within the Thermal Suites onboard the *NCL Joy*, including the slippery-when-wet polished flooring staircase, where Plaintiff slipped and fell on November 8, 2024, proximately caused the Plaintiff's injuries. Had OSW U.S. reasonably warned Plaintiff of the dangerous condition, Plaintiff would have been aware of the dangerous condition and never would have walked onto the dangerously slippery-when-wet staircase flooring. Plaintiff therefore would never have slipped, fallen, and been injured onboard the *NCL Joy* on November 8, 2024.

185. **DAMAGES.** As a direct result of OSW U.S.'s negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited

to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against OSW U.S. for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

### COUNT XV
### NEGLIGENT FAILURE TO WARN – OSW U.S.
**(Vicarious Liability for Negligence**
***Respondeat Superior* Under General Maritime Law)**

186.     The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 44 above.

187.     This is an action against OSW U.S. for its vicarious liability for the active negligence of its Spa attendants (aka cleaners) who were assigned, scheduled, instructed, and/or directed to warn passengers including the Plaintiff of dangerous conditions of the slippery-when-wet dark colored and poorly lit narrowly constructed staircase on Deck 16 leading to the old plunge pool of the Thermal Suite Deck 16, onboard *NCL Joy* on November 8, 2024, and the negligence of the supervisors of those particular stewards assigned on that day and at that location, that is the Assistant Manager and Manager.

188.     **DUTIES OWED BY OSW U.S. ATTENDANTS.** OSW U.S. attendants described herein owed duties to exercise reasonable care under the circumstances for the safety of potential clients of the Spa and NCL passengers arising from the relationship between OSW U.S. and its personnel. OSW U.S. employees duties of care includes warning passengers who come into the area of the slippery-when-wet flooring and steps within the Thermal Suite of the presence of a water accumulation by: (a) posting warning signs; (b) placing physical barriers; (c) stationing personnel at the site of the water or wetness, and other means; to warn passengers of dangerous conditions within the Spa onboard the *NCL Joy,* including the dangerous condition of the slippery-when-wet dark flooring and enclosed steps on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

189.     OSW U.S. shipboard manager or supervisor create shift schedules and section assignments that designate specific crewmembers to inspect, maintain and warn passengers of hazards, risks or dangers in their designated areas including the subject area's flooring.  Further, at all times material hereto, said Spa personnel were employees or agents of OSW U.S. and were part of the larger class of Spa members which are often referred to Spa attendants. OSW U.S. Assistant Manager and Manager scheduled, designated, assigned, instructed and/or Spa attendants or cleaners to inspect and maintain the slippery-when-wet flooring and staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite, onboard *NCL Joy* on November 8, 2024.

190.     The Spa attendants assigned to the subject area where Plaintiff slipped and fell were responsible for being aware of the surroundings, regularly placing signs, stickers, blocking off areas, and other visual or audible notices of dangerous conditions to prevent slip and falls in compliance with OSW U.S.'s maintenance and in adherence to NCL policies and procedures alleged in paragraph 41.

191.   **OSW U.S. ATTENDANTS BREACHED THEIR DUTIES.**   OSW U.S. attendants breached their duties to exercise reasonable care under the circumstances for the safety of prospective clients of the Spa arising from the employer-employee relationship between OSW U.S. and its personnel.

192.   On the day of the incident OSW U.S. attendants or cleaners scheduled, assigned, instructed and/or directed to the subject area failed to warn the Plaintiff of dangerous conditions of the slippery-when-wet dark colored, narrowly constructed and poorly lit staircase in the area where Plaintiff fell.  OSW U.S. attendants or cleaners failed to warn passengers who came into the area of the slippery-when-dark colored flooring and of the presence of a water accumulation by failing to: (a) post warning signs; (b) place physical barriers; (c) station personnel at the site of the water or wetness stairs on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

193.   These cleaning personnel, that is the Spa attendants assigned to this area and on that day, the Assistant Manager and Manager in charge of these personnel at that time were acting within the course and scope of their employment with OSW U.S. Accordingly, the Defendant OSW U.S. is liable and responsible vicariously for the negligence of these cleaning personnel.

194.   **PROXIMATE CAUSE.**   OSW U.S. personnel's failure to reasonably warn Plaintiff of the dangerous conditions onboard the *NCL Joy* including the subject staircase, where Plaintiff slipped and fell on November 8, 2024, proximately caused the Plaintiff's injuries. Had OSW U.S. stewards or cleaners reasonably warned Plaintiff of the dangerous conditions, Plaintiff would have been aware of the dangerous condition and never would have go up the dangerous staircase. Plaintiff therefore would never have slipped, fallen, and been injured in the Spa onboard the *NCL Joy* on November 8, 2024.

195.   **DAMAGES.**  As a result of OSW U.S. personnel's  negligent failure to warn, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These

damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against OSW U.S. under the theory of vicarious liability for damages recoverable under the General Maritime Law and state law including but not limited to economic damages including medical treatment, psychological treatment, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT XVI**
**NEGLIGENT TRAINING OF PERSONNEL – OSW U.S.**
**(Direct Liability for Negligence Under General Maritime Law)**

196. The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 44 above.

197. This is an action against OSW U.S. for its negligent training of Spa attendants or cleaning members.

198. **DUTIES OWED BY OSW U.S.** OSW U.S. owes duties to exercise reasonable care under the circumstances for the safety of NCL's passengers who use or plan to use the Spa amenities including the cold plunge pool onboard the NCL Joy. OSW U.S. duties arise in part

because (a) OSW U.S. personnel, that is agents or employees, were on the Spa providing guided tours to potential Spa clients to passengers onboard the NCL Joy, and upon information and belief (b) OSW U.S. entered into a contract, with the expectation for compensation, to provide Spa services to cruise passengers. Among those services is the contrast therapy which require alternating between hot and cold environments increase circulation and recovery. The cold plunge pool is a sequential component of a contrast therapy cycle.

199.    OSW U.S. knows that the continuous cycling of guests between the Thermal Suite's contrast therapy and its oil-based treatments (such as massages and aromatherapy oils) often results in water and oils accumulating and tracking onto the Spa floors, creating slick flooring conditions.

200.    OSW U.S. duties of care includes but is not limited to: (a) teaching attendants  how to inspect for puddles or water accumulation; (b) teaching attendants how frequently to inspect for water puddles or water accumulation; (c) teaching attendants  how to properly record inspections which ensure frequency of inspection is followed and/or maintained; (d) teaching attendants where puddles or water accumulations continuously and/or repetitively accumulate; (e) teaching attendants how to warn guests about wet slippery floors; (f) teaching attendants how to properly mark, cordon off and/or provide visual cues to alert guests that floors may be wet and slippery; (g) teaching attendants how to reasonably clean and dry floors in a safe condition; (h) teaching attendants how to test, check and/or otherwise determine whether crew understand how to inspect and maintain floors in a clean and dry condition; (i) teaching attendants how to test, check and/or otherwise determine whether crew understand how to warn guests to prevent slip and falls and/or of known slippery wet floors; (j) teaching attendants how to test, check and/or otherwise determine whether Spa attendants understand slip and fall prevention programs; (k) teaching attendants how often crew should be trained to ensure they understand, remember and retain information from training programs regarding how to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness

of wet floors within the Spa; (l) teaching attendants how to comply with industry standards regarding how to inspect and maintain the flooring within the Spa and warn passengers of wet floors and the dangerousness of wet floors; (m) teaching attendants to assign sufficient Spa attendants to implement and operate its inspection, maintenance, warning and/or slip and fall prevention programs; (n) implementing training programs or materials which provide ongoing training of personnel to sufficiently instill on its employees proper inspecting, cleaning, warning, and blocking off areas where there is wetness or a water accumulation. The Spa attendants duties, as detailed above, extend to the narrowly constructed and poorly light enclosed staircase between on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

201.   **NOTICE.**  As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

202.   **OSW U.S. BREACHED ITS DUTIES.**  OSW U.S. breached their duties of care owed to Plaintiff and was negligent by failing to reasonably train its Spa attendants to inspect, maintain, clean, dry and warn passengers of the dangerous conditions in the Spa located onboard the *NCL Joy* including the subject area where Plaintiff slipped and fell on November 8, 2024. OSW U.S. breached its duties to the Plaintiff by its actions and conduct. OSW U.S. failed to reasonably implement or operate its training programs by failing to: (a) teach attendants how to inspect for puddles or water accumulations; (b) teach attendants how frequently to inspect for puddles or water accumulations; (c) teach attendants to properly record inspections which ensure frequency of inspection is followed and/or maintained; (d) teach attendants where puddles or water accumulations continuously and/or repetitively accumulate; (e) teach attendants how to warn guests about wet slippery floors; (f) teach attendants how to properly mark, cordon off and/or provide visual cues to alert guests that floors may be wet and slippery; (g) teach attendants how to reasonably clean and dry floors in a safe condition; (h) teach attendants how to test, check and/or otherwise determine whether

crew understand how to inspect and maintain floors in a clean and dry condition; (i) teach attendants how to test, check and/or otherwise determine whether crew understand how to warn guests to prevent slip and falls and/or of known slippery wet floors; (j) teach attendants how to test, check and/or otherwise determine whether Spa attendants understand OSW U.S. slip and fall prevention program; (k) teach attendants how often crew should be trained to ensure they understand, remember and retain information from training programs regarding how to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (l) teach attendants how to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (m) teach attendants to assign sufficient attendants to implement and operate its inspection, maintenance, warning and/or slip and fall prevention programs; (n) implement training programs or materials which provide ongoing training of personnel to sufficiently instill on its employees  proper inspecting, cleaning, warning, and blocking off areas where there is wetness or a water accumulation.  In doing so, OSW U.S. failed to reasonably implement or operate in accordance with the contractual responsibilities with NCL.

203.    At the time Plaintiff fell on the slippery-when-wet staircase on Deck 16, the attendants that were responsible for warning, cleaning, drying and inspecting, and/or maintaining that area failed to do so.  Because those attendants were not properly trained, OSW U.S. attendants failed to reasonably warn passengers like Plaintiff of the dangerous conditions on board the *NCL Joy* including the area where Plaintiff slipped and fell on November 8, 2024.  Because those attendants were not reasonably trained, those crewmembers also failed to properly inspect, clean, dry and/or otherwise reasonably maintain the area in a safe condition.

204.    **PROXIMATE CAUSE**. OSW U.S.'s failure to reasonably train its crew to implement or operate its training procedures proximately caused Plaintiff's injuries.  Had OSW

U.S. reasonably implemented or operated its training programs; the dangerous condition would not have existed.  Had OSW U.S. reasonably trained its crew members; Plaintiff would have been aware of the dangerous conditions.  Plaintiff therefore would never have slipped, fallen and been injured on the subject area on November 8, 2024.

205.    **DAMAGES**.  As a direct result of OSW U.S.'s negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against OSW U.S. for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT XVII
## NEGLIGENT FAILURE TO MAINTAIN – OSW
### (Direct Liability for Negligence Under General Maritime Law)

206.    The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 44 above.

207.    This is an action against OSW for negligence for failing to maintain, operate, inspect or supervise the Spa area which included the staircase on Deck 16 leading to cold plunge pool of the Thermal Suite in a reasonably safe condition onboard the *NCL Joy* on November 8, 2024.

208.    OSW specializes in providing luxury Spa management and global health and wellness services, offering beauty and wellness treatments both on land and at sea.

209.    At all times material hereto, OSW wholly or partially operated, maintained or supervised the Manda Spa services including personnel and/or products onboard the NCL Joy, where the subject incident occurred.

210.    Upon information and belief OSW entered into a contract with NCL for the operation, management, inspection and cleaning of Spa services which include sales of beauty products, therapy services for body and wellness such as the cold plunge pool onboard the NCL cruise ship where the subject negligence occurred. Both NCL and OSW are in possession of the contract between the parties, as well as all documents outlining the specific duties of the companies, subsidiaries of OSW or other companies referenced in paragraphs 3-6 above relating to the Spa onboard the NCL cruise ship where the incident occurred.

211.    **DUTIES OWED BY OSW.** OSW owes duties to exercise reasonable care under the circumstances for the safety of NCL's passengers who use or plan to use the Spa amenities including the cold plunge pool onboard the NCL Joy.  OSW duties arise in part because (a) OSW personnel, that is agents or employees, were on the Spa providing guided tours to potential Spa

clients to passengers onboard the NCL Joy, and upon information and belief (b) OSW entered into a contract, with the expectation for compensation, to provide Spa services to cruise passengers. Among those services is the contrast therapy, alternating between hot and cold environments which increase circulation and recovery. The cold plunge pool is a sequential component of a contract therapy cycle.

212.    OSW services (such as its hot tubs and cold plunge pool) and its oil-based treatments (such as massages and aromatherapy oils) often results in water and oils accumulating and tracking onto the Spa floors, creating slick flooring conditions.

213.    OSW owed a duty to its clients, potential clients and passengers onboard NCL including the Plaintiff to:  (a) inspect on a frequent and timely basis for wetness or a water accumulation on the slick, slippery-when-wet dark staircase flooring; (b) clean and dry wetness or a water accumulation on the slick, dark staircase flooring; (c) cordon or block off any area on the slick, staircase floor with wetness or a water accumulation, and other means; (d) perform a safety walkthrough of the Spa including the area where the Plaintiff fell before a tour of the subject area is conducted by NCL employees and/or OSW employees; (e) maintain records detailing inspection and maintenance of the Spa floors and staircase to ensure the method and frequency used to inspect and maintain do not create a hazardous conditions for NCL passengers; (f) hire sufficient number of cleaning personnel to patrol and inspect the Spa floors including this one for wetness and water accumulation; onboard the *NCL Joy* in a safe manner, including the subject area where Plaintiff slipped and fell on November 8, 2024, and other means.

214.    **NOTICE.**  As more fully and extensively alleged in the section common to all counts above, Spa had actual or constructive notice in numerous ways.

215.    **OSW BREACHED ITS DUTY.**  OSW breached its duties of reasonable care to Plaintiff to maintain the slippery walkway floors and dark, narrowly constructed and poorly lit

staircase floors on Deck 16 leading to the cold plunge pool of the Thermal Suite onboard the *NCL Joy* on November 8, 2024, where Plaintiff slipped and fell.  OSW's failures include but are not limited to: (a) failing to inspect on a frequent and timely basis for wetness or a water accumulation on the slick, slippery-when-wet staircase flooring; (b) failing to clean and dry wetness or a water accumulation on the slick, slippery-when-wet staircase flooring; (c) failing to cordon or block off any area on the slick, slippery-when-wet staircase floor with wetness or a water accumulation; (d) failing to perform a safety walkthrough of the Spa including the subject staircase floors where the Plaintiff fell before conducting a tour of the subject area; (e) failing to inspect, audit, supervise its employees to ensure the method and frequency used to inspect and maintain do not create a hazardous conditions for NCL passengers; (f) failing to hire sufficient number of cleaning personnel to patrol and inspect the floors including the subject staircase floors for wetness and water accumulation; including the dark slippery-when-wet staircase floors on Deck 16 leading to the cold plunge pool of the Thermal Suite area onboard the *NCL Joy* where Plaintiff slipped and fell on November 8, 2024, and other means.

216.   **PROXIMATE CAUSE.**  OSW's failure to inspect and maintain the dark slippery-when-wet staircase floors on Deck 16 leading to the cold plunge pool of the Thermal Suite in the subject area onboard the *NCL Joy* in a safe manner, proximately caused Plaintiff's injuries. The Defendant's negligent inspection and maintenance allowed for wet areas to remain on the dark staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite to be slick and slippery for an extended period of time. Had OSW properly maintained and inspected the subject area onboard the *NCL Joy*, Plaintiff would have never slipped, fallen, and been injured on *NCL Joy* on November 8, 2024.

217.   **DAMAGES.**  As a direct result of OSW negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are

permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against OSW for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT XVIII
## NEGLIGENT FAILURE TO MAINTAIN – OSW
**(Vicarious Liability for Negligence of OSW Employees**
***Respondeat Superior* Under The General Maritime Law)**

218.     The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 44 above.

219.     This is an action against OSW for its vicarious liability arising from the active negligence of its Spa attendants (aka "cleaners") who were assigned, scheduled, instructed, and/or directed to inspect and/or maintain the slippery-when-wet flooring including the flooring on the subject staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite, onboard *NCL*

*Joy* on November 8, 2024, and the negligence of the supervisors of those particular stewards assigned on that day and at that location, that is the Assistant Manager and Manager.

220.    **DUTIES OWED BY OSW ATTENDANTS.**  OSW personnel described herein owed duties to exercise reasonable care under the circumstances for the safety of NCL's passengers arising from the relationship between OSW and its personnel. OSW employees, cleaners or Spa attendants on the day of this fall had a duty to:  (a) inspect on a frequent and timely basis for wetness or a water accumulation on the slick, slippery-when-wet floor; (b) clean and dry for wetness or a water accumulation on the slick, polished floor and staircase; (c) cordon or block off any area on the slick, polished floor and staircase with wetness or a water accumulation, and other means; (d) perform a safety walkthrough of the Spa including the area where the Plaintiff fell before a tour of the subject area was conducted by OSW employees; and other means.

221.    OSW shipboard assistant manager or supervisor create shift schedules and section assignments that designate specific employees to inspect and maintain the floors of their designated areas including the slippery-when-wet flooring in the subject area.  OSW employees assigned to the subject area are part of a larger class of Spa members which are commonly referred to as Spa attendants. OSW Assistant Manager and Manager scheduled, designated, assigned, instructed and/or Spa attendants or cleaners to inspect and maintain the slippery-when-wet flooring and staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite, onboard *NCL Joy* on November 8, 2024.

222.    The Spa attendants assigned to the subject area where Plaintiff slipped and fell were responsible for inspecting on a timely and frequent basis areas for wetness or water accumulation, clean and dry areas of wetness or water accumulation, block off areas on the slick, dark, narrowly constructed and poorly lit staircase for wetness or a water accumulation or other means to prevent

slip and falls in compliance with OSW's maintenance program and in adherence to NCL policies and procedures alleged in paragraph 41.

223.   **OSW ATTENDANTS BREACHED THEIR DUTIES.**  OSW attendants breached their duties to exercise reasonable care under the circumstances for the safety of prospective clients of OSW arising from the employer-employee relationship between OSW and its personnel. The Spa attendants who were assigned to that area of the slippery-when-wet floor on the narrowly configured and poorly lit enclosed staircase on that day failed to:  (a) inspect on a frequent and timely basis for wetness or a water accumulation; (b) clean and dry wetness or a water accumulation; (c) cordon or block off the area with the wetness on that flooring; and other means of inspecting and maintaining the dangerous condition of the slippery-when-wet polished flooring and staircase leading to the cold plunge pool on Deck 16, where Plaintiff slipped and fell on November 8, 2024.  OSW's attendants failed to inspect and/or maintain the area to prevent slip and falls in compliance with OSW's maintenance program and NCL policy and procedures.

224.   These cleaning personnel, that is the Spa attendants assigned to this area and on that day, the Assistant Manager and Manager in charge of these personnel at that time were acting within the course and scope of their employment with OSW.  Accordingly, the Defendant OSW is liable and responsible vicariously for the negligence of these cleaning personnel.

225.   **PROXIMATE CAUSE.**  The failure of these OSW attendants personnel to inspect and/or maintain the flooring in the subject area onboard the *NCL Joy in* a safe manner, proximately caused Plaintiff's injuries.  These failures of inspection and maintenance allowed for water to accumulate and remain on the slippery-when-wet narrowly configured and poorly lit enclosed staircase located within leading to the cold plunge pool of the Thermal Suite in Deck 16.  Had OSW attendants properly maintained and inspected the slippery-when-wet flooring and subject

staircase, Plaintiff would have never slipped, fallen, and been injured on *NCL Joy* on November 8, 2024.

226.   **DAMAGES.**   As a direct result of the active negligence of OSW attendants described above, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against OSW under the theory of vicarious liability for damages recoverable under the General Maritime Law and state law including but not limited to economic damages including medical treatment, psychological treatment, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT XIX
## NEGLIGENT FAILURE TO WARN – OSW
### (Direct Liability for Negligence Under General Maritime Law)

227.   The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 44 above.

228.     This is an action against OSW for its negligent failure to warn passengers, including Plaintiff, of its hazards, risks or dangers in the Spa onboard the *NCL Joy*.

229.     OSW U.S. specializes in providing luxury Spa management and global health and wellness services, offering beauty and wellness treatments both on land and at sea.

230.     At all times material hereto, OSW wholly or partially operated, maintained or supervised the Spa services including personnel and/or products onboard the NCL Joy, where the subject incident occurred.

231.     **DUTIES OWED BY OSW.**  OSW owes duties to exercise reasonable care under the circumstances for the safety of NCL's passengers who use or plan to use the Spa amenities including the cold plunge pool onboard the NCL Joy. OSW duties arise in part because (a) OSW U.S. personnel, that is agents or employees, were on the Spa providing guided tours to potential Spa clients to passengers onboard the NCL Joy, and upon information and belief (b) OSW entered into a contract, with the expectation for compensation, to provide Spa services to cruise passengers. Among those services is the contrast therapy which requires alternating between hot and cold environments increase circulation and recovery. The cold plunge pool is a sequential component of a contract therapy cycle.

232.     OSW knows that the continuous cycling of guests between the Thermal Suite's water features (like hot tubs and cold plunge pool) and its oil-based treatments (such as massages and aromatherapy oils) often results in water and oils accumulating and tracking onto the Spa floors, creating slick flooring conditions.

233.     OSW owed a duty to its clients, potential clients and passengers onboard NCL including the Plaintiff to warn of the presence of a water accumulation by: (a) posting warning signs; (b) placing physical barriers; (c) stationing personnel at the site of the water or wetness, and other means; to warn passengers of dangerous conditions in the OSW located onboard the *NCL*

76

*Joy,* including the dangerous condition of the slippery-when-wet dark, narrowly constructed and poorly light enclosed staircase on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

234.   **NOTICE.**  As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

235.   **OSW BREACHED ITS DUTY.** OSW breached its duty to warn Plaintiff of the dangerous conditions on board the *NCL Joy,* including where Plaintiff slipped and fell on November 8, 2024.  OSW U.S. breached its duties to the Plaintiff by its actions and conduct.  OSW failed to warn passengers who come into the area of the slippery-when-wet dark polished flooring on the subject staircase by failing to:  (a) post warning signs; (b) place physical barriers; (c) station personnel at the site of the water or wetness, and other means; and failed to warn Plaintiff of dangerous conditions on the staircase on Deck 16 of the Spa's  Thermal Suite onboard the *NCL Joy,* including the dangerous condition created by the slippery-when-wet dark polished flooring and enclosed staircase on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

236.   **PROXIMATE  CAUSE.**  OSW  failure  to  reasonably  warn  Plaintiff  of  the dangerous conditions within the Thermal Suites onboard the *NCL Joy,* including the slippery-when-wet polished flooring staircase, where Plaintiff slipped and fell on November 8, 2024, proximately caused the Plaintiff's injuries. Had OSW reasonably warned Plaintiff of the dangerous condition, Plaintiff would have been aware of the dangerous condition and never would have walked onto the dangerously slippery-when-wet staircase flooring. Plaintiff therefore would never have slipped, fallen, and been injured onboard the *NCL Joy* on November 8, 2024.

237.   **DAMAGES.**  As a direct result of OSW's negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and

in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against OSW for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT XX**
**NEGLIGENT FAILURE TO WARN – OSW**
**(Vicarious Liability for Negligence**
*Respondeat Superior* **Under General Maritime Law)**

238.    The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 44 above.

239.    This is an action against OSW for its vicarious liability for the active negligence of its Spa attendants (aka cleaners) who were assigned, scheduled, instructed, and/or directed to warn passengers including the Plaintiff of dangerous conditions of the slippery-when-wet dark colored and poorly lit narrowly constructed staircase on Deck 16 leading to the old plunge pool of the Thermal Suite Deck 16, onboard *NCL Joy* on November 8, 2024, and the negligence of the

supervisors of those particular stewards assigned on that day and at that location, that is the Assistant Manager and Manager.

240.    **DUTIES OWED BY OSW ATTENDANTS**. OSW attendants described herein owed duties to exercise reasonable care under the circumstances for the safety of potential clients of the Spa and NCL passengers arising from the relationship between OSW and its personnel. OSW employees duties of care includes warning passengers who come into the area of the slippery-when-wet flooring and steps within the Thermal Suite of the presence of a water accumulation by: (a) posting warning signs; (b) placing physical barriers; (c) stationing personnel at the site of the water or wetness, and other means; to warn passengers of dangerous conditions within the Spa onboard the *NCL Joy,* including the dangerous condition of the slippery-when-wet dark flooring and enclosed steps on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

241.    OSW shipboard manager or supervisor create shift schedules and section assignments that designate specific crewmembers to inspect, maintain and warn passengers of hazards, risks or dangers in their designated areas including the subject area's flooring.  Further, at all times material hereto, said Spa personnel were employees of the OSW and were part of the larger class of Spa members which are often referred to Spa attendants. OSW Assistant Manager and Manager scheduled, designated, assigned, instructed and/or Spa attendants or cleaners to inspect and maintain the slippery-when-wet flooring and staircase on Deck 16 leading to the cold plunge pool of the Thermal Suite, onboard *NCL Joy* on November 8, 2024.

242.    The Spa attendants assigned to the subject area where Plaintiff slipped and fell were responsible for being aware of the surroundings, regularly placing signs, stickers, blocking off areas, and other visual or audible notices of dangerous conditions to prevent slip and falls in compliance with OSW maintenance and in adherence to NCL policies and procedures alleged in paragraph 41.

243. **OSW ATTENDANTS BREACHED THEIR DUTIES.** OSW attendants breached their duties to exercise reasonable care under the circumstances for the safety of prospective clients of the Spa arising from the employer-employee relationship between OSW U.S. and its personnel.

244. On the day of the incident OSW attendants or cleaners scheduled, assigned, instructed and/or directed to the subject area failed to warn the Plaintiff of dangerous conditions of the slippery-when-wet dark-colored, narrowly constructed and poorly lit staircase in the area where Plaintiff fell. OSW attendants or cleaners failed to warn passengers who came into the area of the slippery-when-dark colored flooring and of the presence of a water accumulation by failing to: (a) post warning signs; (b) place physical barriers; (c) station personnel at the site of the water or wetness stairs on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

245. These cleaning personnel, that is the Spa attendants assigned to this area and on that day, the Assistant Manager and Manager in charge of these personnel at that time were acting within the course and scope their employment with OSW. Accordingly, the Defendant OSW is liable and responsible vicariously for the negligence of these cleaning personnel.

246. **PROXIMATE CAUSE.** OSW personnel's failure to reasonably warn Plaintiff of the dangerous conditions onboard the *NCL Joy* including the subject staircase, where Plaintiff slipped and fell on November 8, 2024, proximately caused the Plaintiff's injuries. Had OSW stewards or cleaners reasonably warned Plaintiff of the dangerous conditions, Plaintiff would have been aware of the dangerous condition and never would have go up the dangerous staircase. Plaintiff therefore would never have slipped, fallen, and been injured in the Spa onboard the *NCL Joy* on November 8, 2024.

247. **DAMAGES.** As a result of OSW personnel's negligent failure to warn, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages

are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against OSW under the theory of vicarious liability for damages recoverable under the General Maritime Law and state law including but not limited to economic damages including medical treatment, psychological treatment, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT XXI
## NEGLIGENT TRAINING OF PERSONNEL – OSW
**(Direct Liability for Negligence Under General Maritime Law)**

248.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 44 above.

249.     This is an action against OSW for its negligent training of Spa attendants or cleaning members.

250.     **DUTIES OWED BY OSW.**  OSW owes duties to exercise reasonable care under the circumstances for the safety of NCL's passengers who use or plan to use the Spa amenities including the cold plunge pool onboard the NCL Joy.  OSW duties arise in part because (a) OSW

personnel, that is agents or employees, were on the Spa providing guided tours to potential Spa clients to passengers onboard the NCL Joy, and upon information and belief (b) OSW entered into a contract, with the expectation for compensation, to provide Spa services to cruise passengers. Among those services is the contrast therapy which requires alternating between hot and cold environments increase circulation and recovery. The cold plunge pool is a sequential component of a contract therapy cycle.

251.    OSW knows that the continuous cycling of guests between the Thermal Suite's contrast therapy and its oil-based treatments (such as massages and aromatherapy oils) often results in water and oils accumulating and tracking onto the Spa floors, creating slick flooring conditions.

252.    OSW duties of care includes but is not limited to: (a) teaching attendants  how to inspect for puddles or water accumulation; (b) teaching attendants how frequently to inspect for water puddles or water accumulation; (c) teaching attendants  how to properly record inspections which ensure frequency of inspection is followed and/or maintained; (d) teaching attendants where puddles or water accumulations continuously and/or repetitively accumulate; (e) teaching attendants how to warn guests about wet slippery floors; (f) teaching attendants how to properly mark, cordon off and/or provide visual cues to alert guests that floors may be wet and slippery; (g) teaching attendants how to reasonably clean and dry floors in a safe condition; (h) teaching attendants how to test, check and/or otherwise determine whether crew understand how to inspect and maintain floors in a clean and dry condition; (i) teaching attendants how to test, check and/or otherwise determine whether crew understand how to warn guests to prevent slip and falls and/or of known slippery wet floors; (j) teaching attendants how to test, check and/or otherwise determine whether Spa attendants understand slip and fall prevention programs; (k) teaching attendants how often crew should be trained to ensure they understand, remember and retain information from training programs regarding how to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors

within the Spa; (l) teaching attendants how to comply with industry standards regarding how to inspect and maintain the flooring within the Spa and warn passengers of wet floors and the dangerousness of wet floors; (m) teaching attendants to assign sufficient Spa attendants to implement and operate its inspection, maintenance, warning and/or slip and fall prevention programs; (n) implementing training programs or materials which provide ongoing training of personnel to sufficiently instill on its employees proper inspecting, cleaning, warning, and blocking off areas where there is wetness or a water accumulation.  Spa attendants duties, as detailed above, extend to the narrowly constructed and poorly light and enclosed staircase on Deck 16, where Plaintiff slipped and fell on November 8, 2024.

253.   **NOTICE.**  As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

254.   **OSW BREACHED ITS DUTIES.**  OSW breached their duties of care owed to Plaintiff and was negligent by failing to reasonably train its Spa attendants to inspect, maintain, clean, dry and warn passengers of the dangerous conditions in the Spa located onboard the *NCL Joy* including the subject area where Plaintiff slipped and fell on November 8, 2024.  OSW breached its duties to the Plaintiff by its actions and conduct. OSW failed to reasonably implement or operate its training programs by failing to: (a) teach attendants how to inspect for puddles or water accumulations; (b) teach attendants how frequently to inspect for puddles or water accumulations; (c) teach attendants to properly record inspections which ensure frequency of inspection is followed and/or maintained; (d) teach attendants where puddles or water accumulations continuously and/or repetitively accumulate; (e) teach attendants how to warn guests about wet slippery floors; (f) teach attendants how to properly mark, cordon off and/or provide visual cues to alert guests that floors may be wet and slippery; (g) teach attendants how to reasonably clean and dry floors in a safe condition; (h) teach attendants how to test, check and/or otherwise determine whether crew understand how to

inspect and maintain floors in a clean and dry condition; (i) teach attendants how to test, check and/or otherwise determine whether crew understand how to warn guests to prevent slip and falls and/or of known slippery wet floors; (j) teach attendants how to test, check and/or otherwise determine whether Spa attendants understand OSW slip and fall prevention program; (k) teach attendants how often crew should be trained to ensure they understand, remember and retain information from training programs regarding how to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (l) teach attendants how to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (m) teach attendants to assign sufficient attendants to implement and operate its inspection, maintenance, warning and/or slip and fall prevention programs; (n) implement training programs or materials which provide ongoing training of personnel to sufficiently instill on its employees  proper inspecting, cleaning, warning, and blocking off areas where there is wetness or a water accumulation.  In doing so, OSW failed to reasonably implement or operate in accordance with the contractual responsibilities with NCL.

255.    At the time Plaintiff fell on the slippery-when-wet staircase on Deck 16, the attendants that were responsible for warning, cleaning, drying and inspecting, and/or maintaining that area failed to do so.  Because those attendants were not properly trained, OSW attendants failed to reasonably warn passengers like Plaintiff of the dangerous conditions on board the *NCL Joy* including the area where Plaintiff slipped and fell on November 8, 2024. Because those attendants were not reasonably trained, those crewmembers also failed to properly inspect, clean, dry and/or otherwise reasonably maintain the area in a safe condition.

256.    **PROXIMATE CAUSE.** OSW failure to reasonably train its crew to implement or operate its training procedures proximately caused Plaintiff's injuries. Had OSW reasonably implemented or operated its training programs; the dangerous condition would not have existed.  Had

OSW reasonably trained its crew members; Plaintiff would have been aware of the dangerous conditions.  Plaintiff therefore would never have slipped, fallen, and been injured on the subject area on November 8, 2024.

257. **DAMAGES.**  As a direct result of OSW's negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against OSW for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including

[INTENTIONALLY LEFT BLANK]

interest on economic and noneconomic damages from the date of the subject incident under The

General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By:      *s/ Elizabeth D. Carlin*

**JOHN H. HICKEY**, **ESQ.** (FBN 305081)
hickey@hickeylawfirm.com
**ELIZABETH D. CARLIN, ESQ.** (FBN 753521)
ecarlin@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
12150 SW 128th Court, Ste. 225
Miami, Florida 33186
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Counsel for the Plaintiff*